90 P.3d 894

**NERCO MINERALS COMPANY and Nerco Delamar Company, now doing business as Kinross Delamar Company, Plaintiffs–Appellants,**

v.

**MORRISON KNUDSEN CORPORATION, and Morrison Knudsen Engineers, Inc., Defendants–Respondents.**

No. 29352.

Supreme Court of Idaho,
Boise, January 2004 Term.

April 12, 2004.

Stoel Rives, LLP, Boise, for appellant, Nerco Minerals Co. Thomas A. Banducci argued.

Hawley, Troxell, Ennis & Hawley, Boise, for respondent, Morrison Knudsen Corp. Eugene A. Ritti argued.

KIDWELL, Justice.

This case involves professional malpractice, fraudulent concealment and fraudulent misrepresentation. Nerco Minerals Company and Nerco Delamar Company (collectively "Nerco") appeal from the district court's grant of summary judgment in favor of the defendant, Morrison Knudsen Corporation and Morrison Knudsen Engineers, Inc. (collectively "MK"), in an action by Nerco alleging, inter alia, breach of contract, fraudulent misrepresentation, and fraudulent concealment by MK. Summary judgment was granted on the basis that the actions were barred by statutes of limitations. The judgment of the district court is affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In July and August of 1986, Nerco entered into negotiations with MK for development of a heap leach pad at a mine owned by Nerco. Heap leaching is a method used to salvage precious metals from low-grade ore. Development of the project was separated into four phases: Phase I—pad design and conceptual planning; Phase II—feasibility studies; Phase III—detailed engineering; and Phase IV—construction management.

On or about October 1, 1986, MK entered into a contract with Nerco to perform Phase I of the project. MK completed performance in December of 1986, and provided Nerco a report containing the conclusion that the heap leach pad was "acceptable and safe." The report did not suggest that the conclusion was based upon incomplete data. In December of 1986, MK contracted with Nerco to perform Phase II of the project. MK completed the feasibility studies and submitted a report to Nerco in February 1987. In both reports, MK divided the heap leach pad into three modules for construction and production purposes.

MK then offered to contract to perform Phases III and IV of the project. However, in April of 1987, Nerco awarded these contracts to Conveyer Engineering, Inc. ("Conveyer"). Conveyer contracted to construct the entire heap leach pad, adopting MK's methodology of dividing the pad into three modules. On April 29, 1987, MK provided Nerco with preliminary drawings and a preliminary diagram that MK had previously produced in connection with its work on Phases I and II. MK did not perform further work on the project.

Conveyer completed construction of the first module in November of 1987. In January 1990, while the second module was under construction, the first module of the heap leach pad showed signs of failure. Nerco retained the services of several outside engineering firms to investigate the cause of the pad failure and recommend further actions.

Nerco's legal counsel received a report from one of these firms during July of 1990. While Nerco was investigating the pad failure, Nerco and MK entered into an agreement to toll the running of the applicable statutes of limitation. The agreement was effective from December 17, 1991, until November 24, 1993, for a total of twenty-three months and seven days.

On November 24, 1993, Nerco filed complaints against MK in both the United States District Court for the District of Idaho and the District Court for the Third Judicial District of the State of Idaho, in and for the County of Owyhee. In both cases, Nerco alleged breach of contract and breach of express and implied warranties, negligence/professional malpractice, negligence/duty to warn or disclose, and negligent misrepresentation. Nerco served MK with a summons and complaint for the federal action on November 24, 1993, but did not inform MK of the state action until September 14, 1995. On August 9, 1995, despite Nerco's failure to serve MK with the complaint in the state action within six months as required by Rule 4(a)(2), I.R.C.P., Judge Goff issued an order retaining the case for six months. On September 25, 1995, Nerco voluntarily dismissed the federal action due to lack of diversity jurisdiction.

On October 31, 1995, Nerco amended its state court complaint to include claims for fraudulent concealment and fraudulent misrepresentation. Nerco served MK with the amended complaint on the same day. MK thereafter filed a motion to transfer venue to Ada County or, in the alternative, to dismiss the action. On May 21, 1996, venue was transferred from Owyhee County to Ada County. Judge Goff's assignment to the case ended upon the transfer of the case to Ada County.

On August 6, 1996, Nerco filed a second Complaint in Ada County, alleging five claims for relief: breach of contract; negligence/professional malpractice; negligent misrepresentation; fraudulent concealment; and fraudulent misrepresentation. MK was served with the complaint on January 31, 1997.

On August 5, 1997, all of Nerco's claims against MK in the first state action (dated November 24, 1993) were dismissed due to Nerco's failure to serve the complaint within six months, as required by court rule. This Court affirmed in *Nerco Minerals Co. v. Morrison Knudsen Corp.*, 132 Idaho 531, 976 P.2d 457 (1999).

On February 19, 1997, MK filed its Answer to Nerco's second Complaint, filed August 6, 1996, and on February 27, 2001, MK filed a Motion for Summary Judgment asking the district court to grant summary judgment in its favor as to all counts.

On November 20, 2001, the district court entered its Memorandum Opinion and Order on MK's Motion for Summary Judgment. With the exception of Nerco's claim based upon the theory of breach of contract, the district court granted MK's motion as to all claims by Nerco because they were barred by the statute of limitations.

On August 22, 2002, MK moved for a second summary judgment as to the remaining count. In the alternative, MK requested that the district court reconsider its previous ruling as to the interpretation and application of Idaho Code § 5–241(b), which resulted in the denial of MK's motion for Summary Judgment as to the contract claim.

On December 5, 2002, the district court granted MK's motion for summary judgment as to Nerco's sole remaining claim based on the theory of breach of contract. The district court concluded that the rule of law pronounced in Lapham v. Stewart, 137 Idaho 582, 51 P.3d 396 (2002), governed the lawsuit; and because Lapham controlled, it was not necessary to address MK's alternative argument regarding I.C. § 5–241(b). Nerco appeals to this Court.

## II.

## STANDARD OF REVIEW

On appeal from the grant of a motion for summary judgment, this Court employs the same standard as used by the district court originally ruling on the motion. *Griffin Const., Inc. v. City of Lewiston,* 135 Idaho 181, 185, 16 P.3d 278, 282 (2000).

Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). This Court construes all disputed facts liberally in favor of the non-moving party, and it draws all reasonable inferences in favor of the non-moving party. *Eagle Water Co., Inc. v. Roundy Pole Fence Co.,* 134 Idaho 626, 628, 7 P.3d 1103, 1105 (2000).

■ The time when "a cause of action accrues may be a question of law or a question of fact, depending upon whether any disputed issues of material fact exist." *Kimbrough v. Reed,* 130 Idaho 512, 516, 943 P.2d 1232, 1236 (1997). Where there is no dispute over any issue of material fact regarding when the cause of action accrues, the question is one of law for determination by the court. *Id.* However, where there is conflicting evidence as to when the cause of action accrued, the issue is one of fact for the trier of fact. *Id.*

## III.

## ANALYSIS

**The District Court Did Not Improperly Grant Summary Judgment By Ruling That Nerco's Claim Was A Professional Malpractice Claim Rather Than A Contract Claim And Therefore Barred By The Statute Of Limitations**

■ On a motion for summary judgment, if the evidence reveals no disputed issues of material fact, then only a question of law remains. *Lapham v. Stewart,* 137 Idaho 582, 585, 51 P.3d 396, 399 (2002). This Court exercises free review over questions of law. *Id.* Because the parties are not disputing when the cause of action accrued on this issue but, instead, whether the district court mischaracterized Nerco's claim as professional malpractice, there remains only a question of law. *Reis v. Cox,* 104 Idaho 434, 438, 660 P.2d 46, 50 (1982); See *Andrea v. City of Coeur D'Alene,* 132 Idaho 188, 189, 968 P.2d 1097, 1098 (1998).

■ The first analytical step is to classify Nerco's cause of action so the applicable statute of limitations can be used to determine whether the claim is time barred. Nerco argues the cause of action is contract and, therefore, the five-year statute of limitations applies. MK, argues that the cause of action was for professional malpractice and, therefore, the two-year statute of limitations applies, resulting in Nerco's claim being time barred.

Idaho Code § 5-219(4) defines "professional malpractice" as "wrongful acts or omissions in the performance of professional services by any person, firm, association, entity or corporation licensed to perform such services under the law of the state of Idaho." I.C. § 5-219(4). This includes an action "arising from breach of an implied warranty or implied covenant." I.C. § 5-219(4); *Lapham v. Stewart,* 137 Idaho 582, 588, 51 P.3d 396, ft. nt. 4 137 Idaho 582, 51 P.3d 396, 403 (2002).

■ In Lapham, this Court stated that the focus of a professional malpractice claim under I.C. § 5-219(4) is "whether the alleged wrongful act or omission occurred in the course of performing professional services." *Lapham,* 137 Idaho at 589, 51 P.3d at 403. Put differently, the "appropriate statute of limitations is determined by the substance, not the form, of the action." *Trimming v. Howard,* 52 Idaho 412, 416, 16 P.2d 661, 662 (1932).

In Lapham, Lapham engaged Stewart as an attorney to provide legal services in connection with a proposed real estate loan. *Lapham,* 137 Idaho at 589, 51 P.3d at 403. Lapham sued Stewart for professional malpractice based upon the unauthorized disbursement of loan proceeds. *Id.* at 585, 51 P.3d at 399. Stewart moved to dismiss on the grounds that Lapham's professional malpractice action was barred by the statute of limitations under I.C. § 5-219(4).

Lapham moved to file an amended complaint alleging, inter alia, breach of contract on the grounds that by disbursing the funds without the approval of Lapham's father, Stewart breached the terms of the escrow agreement between Lapham and him. *Id.* at

585, 588, 51 P.3d at 399, 402. Lapham maintained that his claim for breach of contract was distinct from his claim for professional malpractice and, therefore, not included within the scope of I.C. § 5–219(4) because when Stewart disbursed the funds, he was acting as an "escrow agent" and not an attorney. *Id.* at 588–89, 51 P.3d at 402–03.

On review, this Court stated that the focus of I.C. § 5–219(4) is whether the alleged wrongful act or omission occurred in the course of performing professional services. *Id.* Because Lapham's breach of contract claim was based upon Stewart's professional services as an attorney, this Court ruled that I.C. § 5–219(4) provided the applicable statute of limitations and, thus, Lapham's professional malpractice claim was time barred under I.C. § 5–219(4). *Id.*

In this case, Nerco's claim was properly characterized as a professional malpractice claim because MK was providing professional services to Nerco when it breached its contract. First, the title of the contract between the parties was entitled, "Master Contract For Professional Services," evidencing a meeting of the minds that the contract was for professional services. Second, the index to the contract and the subtitle on page three of the contract, states this is a "contract for professional services." Third, the introduction on page three of the contract shows that Nerco hired MK for "geologic and/or mineral engineering services ...." Additionally, pursuant to I.C. § 54–1201 et seq., MK had to be licensed in Idaho to render such professional engineering services. See, e.g., I.C. §§ 54–1212 and 1235. Finally, MK committed the alleged breaches, which constituted wrongful acts or omissions in the course of providing professional services to Nerco, by failing to, inter alia: provide a final geotechnical evaluation of the proposed pad site; obtain geotechnical data from Nerco, government agencies and other sources for review; and notify Nerco that the proposed pad site was marginal.

MK committed wrongful acts or omissions within the course of performing its professional services. Therefore, this Court concludes that Nerco's claim is properly characterized as a professional malpractice claim.

Nevertheless, Nerco maintains that Lapham is inapplicable because the Lapham Court did not hold that I.C. § 5–219(4) applied to breaches of express contracts. However, Nerco's argument overlooks the fact that Lapham's "claim for breach of contract alleged that by disbursing the funds..., Stewart breached the terms of the escrow agreement." *Lapham,* 137 Idaho at 588, 51 P.3d at 402. Therefore, Nerco's argument has no merit because this Court's decision in Lapham applied to a breach of an escrow agreement; in other words, an express contract.

Additionally, Nerco argues I.C. § 5–219(4) does not govern express warranty/covenant claims because the statute specifically includes breaches of implied warranties and implied covenants, but not express warranties and express covenants and, therefore, the legislature necessarily meant to exclude the latter from the scope of the statute. However, a reading of the plain language of the statute shows Nerco's assertion is wrong because breach of an express warranty or express covenant in the course of providing professional services would, arguably, constitute an act or omission as contemplated by the statute. If a party expressly warrants or covenants to do or not do something and they breach that, it constitutes an act or omission, which would fall within the scope of the statute. Therefore, it follows that express warranties and express covenants fall within the scope of the statute.

Based on the above discussion, Nerco's claim is properly characterized as a professional malpractice claim. The next step in the Court's inquiry is to determine the applicable statute of limitations and whether Nerco's claim is time barred.

An action seeking to recover damages for professional malpractice must be commenced within two years after the cause of action has accrued. I.C. §§ 5–201 & 5–219; *Lapham,* 137 Idaho at 585, 51 P.3d at 399. Nerco argues this is a breach of contract case and, therefore, I.C. § 5–241(b) applies. However, as the district court noted, I.C. § 5–241(a) applies to professional malpractice claims arising from the final completion of construction, unless they have previously accrued.

I.C. § 5–241(a). In this case, because the date of accrual is undisputed by the parties and because it arose before the final completion of construction set out in I.C. § 5–241(a), that statute is inapplicable; rather, I.C. § 5–219(4) applies because the cause of action for professional malpractice accrues "as of the time of the occurrence, act or omission complained of." *Lapham,* 137 Idaho at 586, 51 P.3d at 400 (quoting I.C. § 5–219(4)).

This result is in agreement with this Court's ruling in *Twin Falls Clinic & Hospital Bldg. Corp. v. Hamill,* 103 Idaho 19, 644 P.2d 341 (1982), because a "cause of action founded in professional malpractice arising out of the design or construction of improvements to real property must be brought within two years of the discovery of the alleged malpractice." 103 Idaho at 24, 644 P.2d at 346. This Court also recognizes that there must be some damage for the cause of action to accrue. *Lapham,* 137 Idaho at 586, 51 P.3d at 400.

In this case, the parties do not dispute that "some damage" occurred in January 1990 when the heap leach pad failed; therefore, the date at which the statute of limitations began to run is agreed to be January 1990. On December 17, 1991, the parties entered into a tolling agreement that lasted until November 24, 1993. Even if the statute of limitations started after the tolling agreement on November 24, 1993, Nerco needed to file by November 1995. By the time Nerco initiated this action on August 26, 1996, the two-year statute of limitations provided by I.C. § 5–219(4) had expired regardless of how the time is computed.

Therefore, this Court finds that Nerco's claim was properly characterized as a professional malpractice claim and was, therefore, time barred by the two-year statute of limitations provided by I.C. § 5–219(4).

### Nerco's Fraudulent Concealment And Fraudulent Misrepresentation Claims Are Barred By The Statute Of Limitations.

■■■■ The statute of limitation for fraud is three years. I.C. § 5–218. The cause of action accrues upon discovery by the aggrieved party of facts constituting fraud.

I.C. § 5–218(4). Where discovery of a cause of action for fraud commences the statute of limitations, the date of discovery is a fact question for the jury unless there is no evidence creating a question of fact. *DBSI/TRI v. Bender,* 130 Idaho 796, 807, 948 P.2d 151, 162 (1997). Actual knowledge of the fraud can be inferred if the aggrieved party could have discovered the fraud by reasonable diligence, although the Court will hesitate to infer such knowledge. *Id.* at 807, 948 P.2d at 162.

Nerco maintains it did not discover facts sufficient to put it on notice of fraudulent concealment or fraudulent misrepresentation by MK until it took the deposition of David O'Day, MK's principal geotechnical engineer, in 1995. MK argues Nerco had facts sufficient to discover fraud no later than July 1990, when Nerco's legal counsel received reports from outside consulting engineering firms who studied the pad's failure and MK's 1986–87 Phase I and II report. Both of Nerco's fraud claims will be discussed below.

### 1. Nerco's Fraudulent Concealment Claim

■■■■ Nerco's claim for fraudulent concealment consists of its allegations that MK failed to disclose that its geotechnical evaluation of the site was. not final or complete. However, the facts demonstrate that Nerco had knowledge, or through the exercise of reasonable diligence, should have had knowledge by July 1990, at the latest, of MK's alleged concealment that its geotechnical evaluation was not final.

In *DBSI/TRI v. Bender,* 130 Idaho 796, 948 P.2d 151, this Court addressed a situation similar to the case at hand. In DBSI/TRI V ("DBSI"), the plaintiff DBSI entered into two agreements in 1984 with the defendant Bender whereby DBSI would purchase from Bender a number of low-income rural housing units financed through subsidized loan arrangements underwritten by the Farmers Home Administration. *Id.* at 799, 948 P.2d at 154. DBSI filed a complaint in May of 1990, alleging, inter alia, that Bender made fraudulent misrepresentations to DBSI which induced DBSI to enter into the agree-

ments. *Id.* at 806–07, 948 P.2d at 161–62. The district court granted summary judgment to Bender on statute of limitations grounds, finding that by December of 1986, more than three years prior to the filing of the complaint, DBSI was on notice of the fraud. *Id.* at 807, 948 P.2d at 162. Facts supporting the district court's finding were a 1986 audit revealing Bender's books and records were incorrect, that there were problems with the reserve account balances for the projects, that Bender had commingled funds between projects, that management fees for the projects appeared excessive, and that the Farmers Home Administration had warned DBSI about improper management. *Id.* at 808, 948 P.2d at 163.

DBSI appealed, arguing while it may have known in December of 1986 that Bender's representations were false, the statute of limitations should not start running until such time as DBSI could demonstrate Bender knew its representations were false. *Id.* at 807, 948 P.2d at 162. This Court affirmed the district court's grant of summary judgment, finding these indications threw sufficient suspicion on the transaction such that DBSI should have called for an explanation from Bender. *Id.* at 808, 948 P.2d at 163. This Court further noted that while the indications did not in and of themselves constitute fraud, they showed the existence of fraud such that DBSI could have shown, through circumstantial evidence, intent to defraud. *Id.*

Nerco knew the heap leach pad failed in 1990. Indeed, they hired two engineering companies, Vector and Golder, to investigate the failure of the pad. Golder's March 1990 report specified that their interpretation of the strength data for the pad did not agree with those of MK. Moreover, Golder stated that their analysis did not "agree with the actual stability results by MKE since [Golder had] interpreted the data differently . . . ." Further, Golder concluded that, based on their calculations, the heap leach pad had been loaded too quickly.

In addition to Golder's report, Vector also submitted reports to Nerco in March and April of 1990, as well as a report to Nerco's counsel in July of 1990. Each of these reports established the belief of Nerco's engineers that the geotechnical analysis of MK failed to reveal significant soil characteristics and strength factors and that, therefore, MK's analysis was false.

These reports put Nerco on notice of the significant findings that certain significant geotechnical conditions existed at the site that were contrary to what MK allegedly found during its geotechnical investigations. As such, Nerco was aware by at least July 1990 that its own engineers believed the geotechnical investigation undertaken by MK was, in fact, not final or complete.

Under DBSI, Nerco had circumstantial evidence based upon its own investigation and the investigation of the Vector and Golder engineering firms of the elements of fraud by MK. Nerco cannot contend, as it does here, that it learned of MK's "intent to defraud" only during depositions taken in 1995.

All of the information available to Nerco, through its own efforts and that of its engineering consultants, constituted sufficient circumstantial evidence from which Nerco knew or, with the exercise of reasonable diligence, should have been able to know, a cause of action for fraud might exist. *DBSI,* 130 Idaho at 808, 948 P.2d at 163. Accordingly, Nerco's fraudulent concealment claim accrued as of July 1990 and it is barred by the three-year statute of limitations.

**2. Nerco's Fraudulent Misrepresentation Claim**

 Nerco's claim for fraudulent misrepresentation consists of its allegation that statements made by MK with its geotechnical evaluation report indicated that the pad design proposed by MK was unequivocally "acceptable and safe" for "slow loading conditions." However, the facts indicate that Nerco knew, or through the exercise of reasonable diligence, should have known as of the date the pad failed in January 1990, or at the latest when Nerco began receiving investigative reports from Golder and Vector, that this statement by MK was inaccurate or false.

As discussed above, the Vector reports and the Golder report, both individually and cu-

**152**

mulatively, establish the belief of Nerco's engineers that the geotechnical analysis of MK failed to reveal significant soil strength characteristics. Additionally, those reports also established that the pad was not safe for slow loading as allegedly represented by MK. Moreover, as previously discussed, the Vector and Golder reports assert not only that the heap was not safe for loading at the rate at which it had been loaded, but also that certain geotechnical conditions existed at the site that were contrary to what MK allegedly had found during its geotechnical investigation. The failure of the pad itself, in January 1990, also indicated that the assumptions under which the pad was being loaded were inaccurate.

These facts establish that as of the pad's failure in January of 1990, Nerco was, or should have been, on notice that the allegedly fraudulent statement by MK that the pad was safe for slow loading conditions was inaccurate.

As such, the statute of limitations began to run in January of 1990 and, considering the tolling agreement, would have expired on January 7, 1995 (three years plus 23 months and seven days after notice to Nerco). Nerco was on notice when it began receiving investigative reports from Vector and Golder in 1990. At the latest, Nerco should have been on notice of the inaccurate nature of MK's allegedly fraudulent statements by the time Nerco's attorneys received the July 3, 1990 engineering report by Vector. Using this date, the statute of limitations would have expired on June 10, 1995 (three years plus 23 months and seven days after July 3, 1990.) The present action was filed on August 6, 1996, more than one year after this date and is, therefore, barred by the statute of limitations.

## IV.

### CONCLUSION

The judgment of the district court granting summary judgment in favor of MK on statute of limitations grounds is affirmed. Nerco's claim was properly characterized as a professional malpractice claim; thus, it was barred by the statute of limitations. Because

Nerco had sufficient facts to know, or with the exercise of reasonable diligence, should have known of MK's alleged fraudulent concealment and fraudulent misrepresentation no later than July 1990, Nerco's fraudulent concealment and fraudulent misrepresentation claims are barred by the three-year statute of limitations.

Justices SCHROEDER, EISMANN, BURDICK and Justice Pro Tem WALTERS concur.