IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 41189

| | |
|---|---|
| JAY BROWN and CHRISTINE HOPSON-BROWN, husband and wife, | ) ) Boise, August 2014 Term |
| Plaintiffs-Respondents, | ) ) 2014 Opinion No. 100 |
| v. | ) ) Filed: September 19, 2014 |
| AUGUSTA SAYOKO MIMOTO GREENHEART, an individual, | ) ) Stephen W. Kenyon, Clerk |
| Defendant-Appellant. | ) ) |

Appeal from the district court of the Fourth Judicial District of the State of Idaho, Elmore County. Hon. Lynn G. Norton, District Judge.

Judgment for reformation of deed, affirmed. Attorney's fees and costs on appeal are awarded to respondent.

Borton Lakey Law Offices, Meridian, attorneys for appellant. Victor Villegas argued.

Givens Pursley, Boise, attorneys for respondents. Michael C. Creamer argued.

WALTERS, J. *pro tem*

This is an action for the reformation of a deed to real property. The appellant, Augusta Greenheart, challenges a decision of the district court determining that a warranty deed conveying a portion of land "with their appurtenances" did not transfer a water right to Greenheart as the purchaser of the property. The district court ordered the warranty deed reformed due to mutual mistake, and grounds of quasi-estoppel and waiver, and granted the sellers of the property, respondents Jay and Christine Brown ("the Browns"), full water rights to the property. The district court entered a judgment reforming the deed accordingly and awarded attorney fees to the Browns as prevailing parties. We affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND

The background in the case is drawn from the findings of fact entered by the district court sitting without a jury. In 1988, the Browns acquired a 320-acre parcel of land in Elmore County ("Brown Property"). In 2000, the Snake River Basin Adjudication Court decreed Water Right

1

Numbers 61-2188 and 61-7151 to the Browns. Water Right Number 61-2188 authorized the irrigation of up to 164 acres within a permissible place of use that encompassed the Brown Property. This water right could be used in conjunction with Water Right Number 61-7151, which permitted the irrigation of up to 123 acres of land, to irrigate up to a total of 287 acres of the Brown Property; however, neither of the water rights had been used to irrigate any portion of the property at issue in this case since at least 1986.

In August, 2003, the Browns leased a portion of their water rights to the Idaho Water Resource Board and agreed to idle 160 acres from irrigation. In 2006, the Browns contracted to sell 272 acres of the water rights to the Idaho Water Company. The buyer did not perform on this contract, and it terminated in 2009. In the meantime, in December 2006, the Browns listed 60 acres of their unirrigated property for sale through a real estate agent. The Browns informed their real estate agent that they did not intend to transfer their water rights to the 60 acres.

Greenheart spoke with the Browns' realtor about purchasing the 60 acres of land, informing the realtor that she wanted vacant land with low taxes and low maintenance. Greenheart testified that her conversation with the Browns' realtor revealed that the land was "dry." Greenheart made an offer on the 60 acres without looking at or inspecting the property. Greenheart was never told before closing on the property that water rights were associated with the property.

The purchase and sale agreement contained the following provision in paragraph 6.E under the heading "Utilities, Improvements, & Other Rights": "Seller represents that the property does have the following utilities, improvements, services and other rights available (describe availability):" with the designation "N/A" inserted after the colon. Paragraph 16 of the purchase and sale agreement provided as follows:

> 16. WATER RIGHTS: Description of water rights, water systems, wells springs, water, ditches, ditch rights, etc. if any, that are appurtenant thereto that are now on or used in connection with the premises and shall be included in the sale unless otherwise provided herein: [left blank.]

The purchase and sale agreement contained a box designating which party would pay for the water rights transfer fee, and the box for "not applicable" was marked. Accompanying the purchase and sale agreement was Seller's Property Disclosure Form, which contained the following disclosure: "Irrigation water provided by: N/A." Greenheart later acknowledged that the designation "N/A" meant "not applicable."

On January 29, 2007, a warranty deed prepared by First American Title conveying a portion of the Brown property to Greenheart was signed and recorded by the Browns in Elmore County. The deed granted the premises "with their appurtenances." On June 10, 2007, Greenheart submitted to the Elmore County Board of Equalization a notice of appeal challenging the tax classification of her property as irrigated agriculture. Greenheart sought to have the property reclassified as dry-grazing. Greenheart requested the Browns to assist in her appeal by appearing before the Board of Equalization and representing that the land had no water right and that the land was strictly for dry grazing. The Board of Equalization granted Greenheart's request on July 6, 2007, and adjusted the land's classification to dry-grazing, which resulted in a $600 per year annual reduction in the real estate taxes on the Greenheart Property. In 2009, during discussions between Greenheart and Elmore County in which Elmore County expressed interest in purchasing the property, Greenheart wrote an email to the county asserting that she understood that at the time she acquired the land she was very aware that the parcel was strictly for dry-grazing only, due to lack of an irrigation system and no water rights.

In February 2012, the City of Mountain Home offered to purchase the Browns' water rights for $2,000 per acre. While speaking with an attorney, the Browns were informed that the "appurtenances" language in the deed to Greenheart may have conveyed a portion of the Browns' water rights. The Browns contacted Greenheart and informed her that the water rights may have been inadvertently conveyed to her. On February 17, 2012, allegedly without notice to the Browns, Greenheart filed a notice of change of water right ownership with the Idaho Department of Water Resources ("IDWR"). On March 22, 2012, the IDWR revised its records to indicate that Greenheart was the current owner of a portion of the water rights held by the Browns and reduced the quantity of rights held by the Browns.

The Browns filed a quiet title complaint on April 5, 2012. The Browns sought declaratory judgment that they owned the water rights because the claim that the water rights passed under the appurtenances clause of the warranty deed was rebuffed by facts demonstrating that the parties did not intend to convey water rights. Count 1 of the complaint requested declaratory judgment on contract interpretation. Count 2 requested a declaratory judgment under the principles of promissory estoppel, quasi-estoppel, and waiver. Greenheart answered with affirmative defenses, including the statute of limitations, laches, merger, waiver, estoppel, parol evidence, and unclean hands. The Browns moved for summary judgment on each of their quiet

title claims, maintaining that the water rights were not appurtenant to the property conveyed. Greenheart also sought summary judgment on the grounds that the Browns' claims were barred by one or more statutes of limitations and that the deed unambiguously conveyed water rights, rendering inadmissible any extrinsic evidence regarding the parties' intent. With respect to the cross-motions for summary judgment, the district court decided that "the matters presented by both sides in support of the motions for summary judgment raise the issue of whether there was a mistake which is a question of fact that precludes summary judgment."

The district court also denied Greenheart's motion for summary judgment on the statute of limitations question, finding that the Browns' claim accrued on February 17, 2012, when Greenheart filed a Notice of Change of Ownership of the Water Rights with the IDWR, which constituted a claim adverse to the Browns' interest. The court also denied Greenheart's motion to strike certain parol evidence on the basis that even a deed that is unambiguous on its face can be challenged with parol evidence when issues of fraud or mistake are presented.

Prior to trial, Greenheart sought reconsideration of the order denying her motion for summary judgment and asserted that the issue of mutual mistake had not been specifically pled by the Browns. In response, the Browns filed a motion to amend their complaint with a claim alleging mutual mistake and requested reformation of the warranty deed on that ground. At a pretrial conference on February 21, 2013, the district court denied Greenheart's motion to reconsider and denied the Browns' motion to amend their complaint, ruling that the issue of mutual mistake had been sufficiently pled in the original complaint.

A bench trial was held on March 5, 2013. At the conclusion of the trial, the district court ruled that the evidence showed a mutual mistake was made by the parties when the warranty deed included unqualified appurtenances language. The district court also ruled that the Browns were entitled to equitable relief on the grounds of quasi-estoppel and waiver as alleged in Count 2 of their complaint. On May 23, 2013, final judgment was entered reforming the warranty deed to specifically exclude and reserve the water rights to the Browns. Finding that a commercial transaction was the gravamen of the lawsuit, the district court awarded attorney fees to the Browns as the prevailing parties under Idaho Code section 12-120(3). Greenheart filed a notice of appeal to contest the district court's determinations of mutual mistake, applicable statutes of limitations, and the award of attorney fees.

## II. ISSUES ON APPEAL

4

1. Whether the district court erred when it ruled that the Browns' claims were not barred by a statute of limitations.

2. Whether the district court erred when it permitted the Browns to try the issue of mutual mistake.

3. Whether Greenheart failed to appeal the district court's decision on quasi-estoppel and waiver.

4. Whether the district court erred when it declined to preclude the Browns from relying on mutual mistake because they were negligent in protecting their interests.

5. Whether the district court erred when it ruled that the purchase and sale agreement was ambiguous.

6. Whether the district court erred when it awarded attorney fees to the Browns on the basis that the purchase and sale agreement was a commercial transaction.

7. Whether either party is entitled to attorney fees on appeal.

### III. STANDARD OF REVIEW

Review of the lower court's decision is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. A trial court's findings of fact in a court tried case will be liberally construed on appeal in favor of the judgment entered, in view of the trial court's role as trier of fact. It is the province of the district judge acting as trier of fact to weigh conflicting evidence and testimony and to judge the credibility of the witnesses. If the findings of fact are based on substantial evidence, even if the evidence is conflicting, they will not be overturned on appeal. However, we exercise free review over the lower court's conclusions of law to determine whether the court correctly stated the applicable law, and whether the legal conclusions are sustained by the facts found.

*Hardy v. McGill*, 137 Idaho 280, 285, 47 P.3d 1250, 1255 (2002) (quoting *Conley v. Whittlesey*, 133 Idaho 265, 269, 985 P.2d 1127, 1131 (1999)).

### IV. ANALYSIS

#### A. Statutes of Limitations.

The district court ruled that the four-year statute of limitations of Idaho Code section 6-401 did not begin to accrue until Greenheart asserted an adverse claim against the water rights of the Browns in February, 2012. The district court also ruled that the three-year statute of limitations for a claim pursuant to Idaho Code section 5-218(4), based on an allegation of mistake, had not run. The district court ruled that the Browns exercised due diligence when they hired a realtor and a title company to assist with the land sale transaction with Greenheart and

that a mistake with regard to the deed was not manifest at that moment in time. The district court further held the statute of limitations did not begin running with the tax assessment on the property that was protested by Greenheart because both parties were surprised at the assessment, and the facts that constituted the mistake—the unintended significance of the "with their appurtenances" language—was not discovered at that time but only after a lawyer reviewed the sale of water rights to the City of Mountain Home in 2012.

Greenheart argues that the district court erred when it ruled that the Browns' declaratory and quiet title action was not barred by the four-year statute of limitations provided by Idaho Code section 5-224 or the five-year statute of limitations provided by Idaho Code section 5-216. Greenheart also argues that even if mutual mistake was pled by the Browns with particularity, it was barred by the three-year statute of limitations provided by Idaho Code section 5-218(4). Greenheart contends that the Browns' action is barred by the statute of limitations because the warranty deed conveyed appurtenances including ground water, which had the effect of triggering the statute of limitations provided by Idaho Code section 5-224. Greenheart maintains that even if mutual mistake applied, the claim is barred by the statute of limitations provided by Idaho Code section 5-218(4) because the mistake was discoverable at the time the warranty deed was executed. Greenheart argues that due diligence would demonstrate the alleged mistake because the warranty deed did not have any language reserving or otherwise excepting water from the transfer of real property. These same arguments were presented to the district court to no avail.

"[W]here discovery of a cause of action commences the statute of limitations the date of discovery is a fact question for the jury unless there is no evidence creating a question of fact." *McCoy v. Lyons*, 120 Idaho 765, 773, 820 P.2d 360, 368 (1991). "A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous." *Thomas v. Madsen*, 142 Idaho 635, 637, 132 P.3d 392, 394 (2006).

       1.     *The quiet title action was not barred by application of Idaho Code section 5-224.*

Idaho Code section 6-401 provides in pertinent part that "[a]n action may be brought by any person against another who claims an estate or interest in real or personal property *adverse to him*, for the purpose of determining such adverse claim . . . ."[1] (emphasis added). Under

---

[1] The parties concede that the instant water rights case is not governed by Title 42, Chapter 14 addressed by the omitted portion of Idaho Code section 6-401.

6

Idaho's catchall statute of limitations, "[a]n action for relief not hereinbefore provided for must be commenced within four (4) years after the cause of action shall have accrued." I.C. § 5-224.

The district court correctly held that the Browns' quiet title action was not barred by the four-year statute of limitations provided by Idaho Code section 5-224. The cause of action for quiet title accrues where another person claims an interest in property "adverse to" another. The statute of limitations under Idaho Code section 5-224 did not start running until Greenheart claimed a right to the water rights associated with the property. At no time before 2012 did Greenheart make any claim of ownership of water rights and prior thereto, the Browns exercised control over and used the water rights exclusive to Greenhart. Indeed, on several occasions Greenheart disclaimed the existence of water rights and asked the Browns for their assistance in disclaiming those rights. It was not until the Browns learned from an attorney that there might be a mistake in the deed, and only after Greenheart apparently perceived an opportunity to take advantage of the Browns, that for the first time Greenheart claimed an interest in the Browns' water rights by filing a notice with the IDWR. At no time before 2012 was there any action by Greenheart adverse to the Browns' water rights. The district court's determination is supported by substantial, competent evidence and is not clearly erroneous.

2.      *The mutual mistake claim was not barred by application of Idaho Code section 5-218(4).*

Idaho Code section 5-218(4) provides that "[a]n action for relief on the ground of fraud or mistake" must be filed within three years, but the cause of action "[is] not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." This Court has held that the question of when fraud was discovered for the purposes of commencing the statute of limitations is generally a question of fact for the finder of fact unless there is no evidence creating a genuine issue of fact. *Nerco Minerals Co. v. Morrison Knudsen Corp.*, 140 Idaho 144, 148, 90 P.3d 894, 898 (2004). This Court has examined the accrual of actions involving fraud and mistake together. *See Kimbrough v. Reed*, 130 Idaho 512, 516, 943 P.2d 1232, 1236 (1997). This Court's inquiry focuses on when a party "discovered or should have discovered the alleged fraud or mistake." *Id.* In other words, the same principles relating to fraud logically apply to causes of action based upon mistake. *See Aitken v. Gill*, 108 Idaho 900, 902, 702 P.2d 1360, 1362 (Ct. App. 1985). Therefore, the inquiry for determining when a cause of action accrues for purposes of the running of the statute of limitations based on alleged mistake is when a party discovered or should have discovered the alleged mistake.

The district court's decision finding that the statute of limitations did not begin to run on the Browns' mutual mistake claim until they were informed of the mistake by an attorney is not clearly erroneous. As noted, this Court's inquiry focuses on when a party should have discovered the alleged fraud or mistake. Although Greenheart suggests a bright line rule that a party is expected to realize the alleged fraud or mistake at the time of execution of a deed, such a rule has not been adopted by this Court. Indeed, the legislature has made the policy decision to include in the statute that a cause of action "[is] not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Here, the evidence demonstrates that the parties had the same understanding that water rights would not be transferred to Greenheart and the parties continued to abide by that understanding until the Browns were informed of the issue caused by the language "with their appurtenances" in 2012. Before that time, Greenheart made no adverse claim against the water rights of the Brown Property and the Browns exercised the water rights. Before that time, nothing indicated that the water rights were actually transferred. The Elmore County Board of Equalization's classification of the property for tax purposes did not raise sufficient facts to result in discovery of the mistake because there is no evidence that the Board of Equalization based its classification of the property on the use of the language "with their appurtenances" in the deed, and the Board of Equalization granted Greenheart's request to change the classification of the property. Greenheart failed to raise any facts indicating that the Browns were aware of the mistake before they met with a lawyer in February, 2012 and that Greenheart was aware of the mistake before the Browns informed her of the mistake. The district court's finding that the Browns' claims were not barred by the statutes of limitations is not clearly erroneous.

**B.     Mutual Mistake.**

The district court ruled that the Browns demonstrated by clear and convincing evidence that both parties shared a vital misconception about the water rights appurtenant to the property. The district court found that no water rights were intended to be transferred with the property, that the non-transfer of the water rights was material to the bargain, and that the misconception was so substantial and fundamental as to defeat the object of the parties, which was the sale of dry-grazing land. The district court noted that the Browns had earlier showed an intention to sell their water rights separately in 2003 before they listed the property for sale in 2006 and that Greenheart continued to represent that the water rights had not been transferred, and the land was

8

dry. With regard to the reformation of a deed, this Court will rely upon the trial court to weigh the evidence in determining whether a mutual mistake exists, since it is a factual issue. *Hughes v. Fisher,* 142 Idaho 474, 480, 129 P.3d 1223, 1229 (2006) (citing *Cline v. Hoyle & Associates Ins. Inc.,* 108 Idaho 162, 164, 697 P.2d 1176, 1178 (1985)).

Greenheart argues that the district court erred when it permitted the Browns to try the issue of mutual mistake because the Browns failed to plead mutual mistake, did not plead mutual mistake with particularity in compliance with I.R.C.P. 9(b), and Greenheart did not litigate the issue of mutual mistake during the summary judgment phase of the proceedings. Greenheart submits that the Browns never argued nor intended to argue mutual mistake, but Greenheart asserts that mutual mistake was first raised by the district court in its order denying summary judgment. Greenheart specifically notes that the Browns' complaint does not mention "mistake" and does not request reformation of the deed on the ground of mutual mistake. Finally, Greenheart contends that the issue of mistake was not litigated by express or implied consent because Greenheart continued to maintain that mistake was not raised throughout the proceedings.

The Browns maintain that the district court did not err when it permitted them to try their issue of mutual mistake because the district court found that the arguments of both parties encompassed the issue of mistake in their positions before the court. The Browns assert that Greenheart was not prejudiced because the district court was within its discretion to permit an amendment to their complaint at any time, but the district court denied the Browns' precautionary motion to amend by holding that the Browns adequately pled mutual mistake in their complaint. The Browns point out that Greenheart was on notice the case involved an issue of mutual mistake because the parties argued about this issue at the summary judgment phase and the district court ruled at this early stage that mutual mistake had been sufficiently pled when the court denied the Browns' motion to amend.

In accordance with I.R.C.P. 8(a), a pleading must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief' and a demand for relief." *Harper v. Harper*, 122 Idaho 535, 536, 835 P.2d 1346, 1347 (1992) (quoting I.R.C.P. 8(a)). Pleadings "should be liberally construed in the interest of securing 'a just, speedy and inexpensive resolution of the case.'" *Brown v. City of Pocatello*, 148 Idaho 802, 807, 229 P.3d 1164, 1169 (2010) (quoting *Seiniger Law Office, P.A. v. N. Pac. Ins. Co*., 145 Idaho 241, 246, 178 P.3d 606,

9

611 (2008)). Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required. I.R.C.P. 8(e)(1). "The key issue in determining the validity of a complaint is whether the adverse party is put on notice of the claims brought against it." *Gibson v. Ada Cnty. Sheriff's Dep't*, 139 Idaho 5, 9, 72 P.3d 845, 849 (2003). Rule 9(b) requires that claims of fraud and mistake be pleaded with particularity. I.R.C.P. 9(b). This rule requires the alleging party to specify what factual circumstances constitute fraud or mistake. *See Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 239, 108 P.3d 380, 386 (2005).

We conclude that the district court did not err when it ruled that the Browns pled with sufficient particularity circumstances supporting the claim of mutual mistake to put the parties on notice of the issue. In their complaint, the Browns' allegations aver that even though the parties included the language "with their appurtenances" in the deed, the parties did not intend to convey the water rights. They noted that the parties' discussions stressed the land was dry land, that the disclosure indicated that the provision of irrigation water was "N/A," that Greenheart testified before the Board of Equalization that the land was dry, and that Greenheart stated she was aware that she did not have water rights to the property. The Browns' quiet title action was largely based on facts asserting that it was known by both parties that no portion of the water rights was "intended to be conveyed." These statements were sufficient in detail to put the parties on notice that a misconception or mistake was at issue in the case because water rights were not intended to be conveyed. At the time of summary judgment the parties were disputing whether mistake had been adequately pled as a basis for relief, and the Browns requested a motion to amend their complaint to include a claim alleging mutual mistake as a precaution. The district court denied the motion to amend because the court found that mutual mistake had been adequately pled. Thus, it is clear that Greenheart had more than sufficient notice that mistake was at issue for resolution by trial and that Greenheart would be required to litigate this issue.

We hold that the district court did not err when it ruled that mutual mistake was sufficiently pled with particularity.

## C. Estoppel and Waiver.

In addition to reforming the parties' deed to exclude water rights because the Browns had established the grounds of mutual mistake, the district court entered findings and concluded that Greenheart should be precluded by quasi-estoppel and waiver from asserting ownership to the water rights. Consequently, the district court granted the reformation of the deed on two

10

independent grounds, stating: "In this case, mutual mistake and the doctrines of quasi estoppel and waiver justify the Court reforming the deed to become the deed that the parties would have made but for the mistake." With respect to the quasi-estoppel and waiver claims, the district court ruled that Greenheart took a different position in claiming an interest in the water rights that Greenheart had disclaimed in 2007 and 2009. The district court found that Greenheart gained a substantial tax advantage by claiming the land was dry grazing land and that the Browns were disadvantaged because they incurred expenses to sell water rights they believed were theirs before Greenheart changed positions. The district court found Greenheart's claim unconscionable because permitting Greenheart to presently change positions would result in a windfall that neither party contemplated at the time of the purchase agreement.

On this appeal, Greenheart has taken issue only with the district court's determination with regard to the finding of mutual mistake and the court's reformation of the deed granted on that ground alone. Greenheart failed to assert any error in her initial appellant's brief with respect to the district court's determination that the Browns were entitled to relief also on the grounds of quasi-estoppel and waiver for reformation of the parties' deed.

It is well settled that "[w]here a trial court grants summary judgment on two independent grounds and the appellant challenges only one of those grounds on appeal, the judgment must be affirmed." *Campbell v. Kvamme*, 155 Idaho 692, 696, 316 P.3d 104, 108 (2013) (citing *AED, Inc. v. KDC Invs., LLC*, 155 Idaho 159, 307 P.3d 176 (2013)). "When a decision is 'based upon alternative grounds, the fact that one of the grounds may be in error is of no consequence and may be disregarded if the judgment can be sustained upon one of the other grounds.'" *Andersen v. Prof. Escrow Servs.*, 141 Idaho 743, 746, 118 P.3d 75, 78 (2005) (quoting *MacLeod v. Reed*, 126 Idaho 669, 671, 889 P.2d 103, 105 (Ct. App. 1995)).

Accordingly, we affirm the judgment of the district court granting reformation of the parties' deed on the unchallenged grounds of quasi-estoppel and waiver.

### D. Issue of Negligence.

The district court, in the context of the statute of limitations issues, declined to rule that the Browns were negligent in their failure to obtain legal advice with respect to the execution of their warranty deed. The district court reasoned that the Browns read the warranty deed but failed to attach adequate legal significance to the words "with their appurtenances" included in the deed. The district court noted, however, that the Browns sought the advice and assistance of

a licensed realtor and a professional title company to assist in the document preparation. The district court ruled that Greenheart's negligence argument would effectively render the failure to seek legal advice in the closing of real estate transactions negligence per se, which it declined to do.

Greenheart argues that the district court erred when it failed to preclude the Browns from relying on mistake because they were negligent in protecting their interests. Greenheart argues that the Browns were negligent because they failed to include any words indicating an exclusion of the transfer of water rights in the warranty deed. Greenheart further argues that the Browns considered water rights important as demonstrated by their retention of a realtor and a title company, but the Browns failed to retain a lawyer to review the warranty deed, which was negligent.

The Browns point out that Greenheart raises the issue of the Browns' negligence in protecting their interests for the first time on appeal. Regardless, the Browns argue that the district court's finding that the Browns were not negligent was not clearly erroneous because Greenheart does not identify any facts showing that the Browns were negligent, especially since the Browns hired both a licensed realtor and a title company to assist in the process of transferring the land.

We are persuaded by the Browns' initial point. An issue cannot be raised for the first time on appeal. *Bank of Commerce v. Jefferson Enters., LLC*, 154 Idaho 824, 828, 303 P.3d 183, 187 (2013). Greenheart concedes in her principal brief that the district court's discussion of negligence was in the context of its decision on the statute of limitations question. The district court rejected the argument that the mistake would have been discoverable at the time the warranty deed was executed if the Browns would have sought legal advice and not been negligent in that regard. This is not the issue Greenheart now attempts to raise on appeal by contending that the Browns were negligent in protecting their rights and thereby waived their claim of mutual mistake. Since this issue is not the issue that was raised in the district court below, or what the district court considered, we decline to address it further.

### E. Purchase and Sale Agreement is Ambiguous.

The district court found that the purchase and sale agreement was ambiguous and subject to two different and reasonable interpretations. The district court found the placement of a colon at the end of paragraph 16 instead of a period and the use of the word "herein" caused the

12

document to be ambiguous because it is unclear whether "herein" references the blank space in paragraph 16, the section, or the whole agreement. The district court also read paragraph 16 in conjunction with paragraph 6.E and the costs box to find ambiguity. The district court noted that the information regarding water rights could have been indicated in any of these sections but was not. The district court therefore looked at extrinsic evidence to determine that water rights were not transferred appurtenant to the 60 acres.

Greenheart argues that the district court erred when it ruled that paragraph 16 of the purchase and sale agreement was ambiguous and therefore permitted the admission of extrinsic evidence. Greenheart argues that the purchase and sale agreement expressly states that water rights are a part of the transaction. Greenheart argues that the phrase in paragraph 16 "shall be included unless otherwise provided herein" contemplates that any exclusion of water rights must be identified within paragraph 16. Greenheart also notes that no other portion of the purchase and sale agreement mentions or otherwise provides an opportunity to exclude water rights.

The Browns argue that the purchase and sale agreement was ambiguous because it used language that is inherently ambiguous. The Browns argue that regardless of the ambiguity of the purchase and sale agreement, extrinsic evidence of mutual mistake is admissible even if a contract is not ambiguous.

Whether a contract is ambiguous is a question of law which may be freely reviewed by an appellate court. *Cool v. Mountainview Landowners Coop. Ass'n*, 139 Idaho 770, 772, 86 P.3d 484, 486 (2005); *Clark v. St. Paul Property & Liability Ins. Cos.,* 102 Idaho 756, 757, 639 P.2d 454, 455 (1981). Where a document is ambiguous then evidence as to the meaning of the instrument may be submitted to the finder of fact. *Knipe Land Co. v. Robertson*, 151 Idaho 449, 455, 259 P.3d 595, 601 (2011).[2] A contract term is ambiguous when there are two different, reasonable interpretations of the language. *Swanson v. Beco Constr. Co.*, 145 Idaho 59, 62, 175 P.3d 748, 751 (2007). In the absence of ambiguity, a document must be construed by the meaning derived from the plain wording of the instrument. *C & G, Inc. v. Rule*, 135 Idaho 763, 765, 25 P.3d 76, 78 (2001).

---

[2] Extrinsic evidence regarding the meaning of an agreement is also admissible where fraud or mutual mistake has been plead. *Bilbao v. Krettinger*, 91 Idaho 69, 72, 415 P.2d 712, 715 (1966) (holding the parol evidence rule "not pertinent to the present issue" because "[a] contract may be clear and unambiguous as far as it goes, and yet may not express the true agreement of the parties, by reason of mutual mistake.").

The district court did not err when it ruled that the purchase and sale agreement was ambiguous. Paragraph 16 of the purchase and sale agreement provides as follows:

> 16. WATER RIGHTS: Description of water rights, water systems, wells springs, water, ditches, ditch rights, etc. if any, that are appurtenant thereto that are now on or used in connection with the premises and shall be included in the sale unless otherwise provided herein: [left blank.]

The purchase and sale agreement contained the following provision in paragraph 6.E under the heading "Utilities, Improvements, & Other Rights": "Seller represents that the property does have the following utilities, improvements, services and other rights available (describe availability): N/A". The purchase and sale agreement contained a box designating which party would pay for the water rights transfer fee and the box for "not applicable" was marked. Accompanying the purchase and sale agreement was Seller's Property Disclosure Form, which contained the following disclosure: "Irrigation water provided by: N/A".

Paragraph 16 of the purchase and sale agreement is ambiguous as to whether the water rights that are appurtenant to the land are included in the sale "unless otherwise provided herein" means that such a provision must be made in this paragraph or made elsewhere in the document. "Herein" is defined as "[i]n this thing (such as a document, section, or paragraph) . . . . This term is inherently ambiguous." Black's Law Dictionary, at 843 (10th ed., 2014). The inherent ambiguity by the use of the term "herein" is demonstrated in this case where it is not clear as to whether the provision excluding water rights must be made in paragraph 16 or in the purchase and sale agreement considered as a whole.

Looking at the purchase and sale agreement as a whole, the agreement is also ambiguous with respect to whether the water rights were conveyed. Paragraph 6.E described the rights available on the property as "not applicable." The parties checked a box indicating that the payment of the fee for the transfer of water rights was likewise not applicable. If water rights were intended to be transferred, then the payment of the transfer fee would very much be applicable. Finally, the purchase and sale agreement included a disclosure indicating that the provision of irrigation water was not applicable.

The contract as a whole is ambiguous as to whether the purchase and sale agreement intended to convey the water rights. Thus, the district court did not err in examining extrinsic evidence to resolve the ambiguity.

**F. The District Court Did Not Err By Awarding Attorney Fees to the Browns.**

14

The district court ruled that the Browns were entitled to attorney fees below pursuant to Idaho Code section 12-120(3) because a commercial transaction was the gravamen of the lawsuit over the conveyance of the property to Greenheart. Idaho Code section 12-120(3) provides that "[i]n any civil action to recover on . . . any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee. . . ." I.C. § 12-120(3). A "commercial transaction" is any transaction "except transactions for personal or household purposes." *Id.* The commercial transaction must be "between the prevailing party and the party from whom that party seeks fees." *Harris, Inc. v. Foxhollow Const. & Trucking, Inc.*, 151 Idaho 761, 778, 264 P.3d 400, 417 (2011) (quoting *Soignier v. Fletcher*, 151 Idaho 322, 327, 256 P.3d 730, 735 (2011)). "[I]n order for a transaction to be commercial, each party to the transaction must enter the transaction for a commercial purpose." *Carrillo v. Boise Tire Co.*, 152 Idaho 741, 756, 274 P.3d 1256, 1271 (2012). The conveyance of real property may constitute a commercial transaction. *See Watson v. Watson*, 144 Idaho 214, 216, 159 P.3d 851, 853 (2007).

The district court ruled that both parties entered into the purchase for a commercial purpose. The district court found that Greenheart purchased the land for a commercial purpose because she owned several properties, knew the land she was purchasing could not have a residence, and was dry-grazing land. Greenheart was looking to purchase land with low taxes, Greenheart never lived on the land, Greenheart was aware that the land was strictly for farming, and Greenheart leased the land to the Browns for grazing. The district court found that the land was not purchased for household or personal purposes but for investment purposes. The district court ruled that the Browns' sale of the land was for a commercial purpose because even though their house was on the property, it was a large property that the Browns used for agriculture. Additionally, the district court noted that the Browns also entered into numerous agreements to lease or to sell their water rights and land that was not irrigated.

Greenheart argues that the district court erred when it awarded attorney fees below finding that the purchase and sale agreement was a commercial transaction. Greenheart submits that Idaho Code section 12-120(3) is not applicable because the evidence does not demonstrate that Greenheart had a commercial purpose for the purchase of the property. Greenheart further contends that there is no evidence that the Browns had a commercial purpose for selling the property. Greenheart argues that the purchase and sale agreement does not amount to a commercial transaction because the evidence fails to demonstrate that Greenheart purchased the

15

property as an investment. Greenheart claims that the evidence fails to demonstrate that Greenheart intended to use the property for any commercial venture. Finally, Greenheart argues that the district court's reliance on how the Browns used their water rights in the past was erroneous because such uses did not bear on the actual land transaction between the Browns and Greenheart. The thrust of Greenheart's arguments invite this Court to revisit and re-decide factual determinations already made by the district court. This we will not do.

We conclude the district court did not err when it found that Greenheart and the Browns entered into their agreement as a commercial transaction. The district court's finding that the Brown's sale of a portion of their property to Greenheart constituted a transaction for a commercial purpose is supported by the evidence. The Browns owned 320 acres that they used for ranching and farming—operations on which the Browns relied to derive income. The Browns also acquired water rights for a portion of their land which they leased out and eventually sold. The Brown Property had a portion that lacked water rights and it was this portion—without any improvements—that the Browns sold. Although the Brown Property did include their residence, the portion sold to Greenheart did not include the residence, and the existence of a residence on the property does not automatically disqualify a land conveyance from being a commercial transaction. *See Watson*, 144 Idaho at 219, 159 P.3d at 856 (holding sale of property was commercial transaction where the land was for both a family retreat and for logging); *Herrick v. Leuzinger*, 127 Idaho 293, 306, 900 P.2d 201, 214 (Ct. App. 1995) (holding lease of property was a commercial transaction where the property was for commercial ranching but a residence was maintained on the property). This Court's decisions are clear that commercial ranching and commercial farming are commercial transactions. *Id.*; *Garner v. Bartschi*, 139 Idaho 430, 439, 80 P.3d 1031, 1040 (2003); *Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 869 P.2d 1365 (1994).

The evidence shows that Greenheart purchased the property for a commercial purpose. The evidence is clear that the land was for dry grazing and did not contain any improvements. Greenheart purchased this land as an investment because of its low taxes. Greenheart executed a grazing lease on the land after her purchase and declined to sell the property to Elmore County expecting the property value to appreciate in the near future. The evidence is clear that Greenheart intended the purchase of land as an investment. "'A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous.'" *VanderWal v. Albar,* Inc., 154

Idaho 816, 821, 303 P.3d 175, 180 (2013) (quoting *Trustee v. Wininger*, 141 Idaho 570, 572, 114 P.3d 128, 130 (2005)). "Factual findings are not clearly erroneous if they are supported by substantial and competent evidence, which is evidence that a reasonable trier of fact could accept and rely upon in determining that such facts have been proved." *VanderWal*, 154 Idaho at 821, 303 P.3d at 180 (citing *Elliot v. Verska*, 152 Idaho 280, 285, 271 P.3d 678, 683 (2012)).

Because the parties entered into this land agreement for a commercial purpose, and not for household or personal purposes, the district court did not err when it awarded the Browns attorney fees pursuant to Idaho Code section 12-120(3).

### G.    Attorney Fees on Appeal.

Although Greenheart requests attorney fees pursuant to Idaho Code section 12-121, Greenheart is not the prevailing party to this appeal. The Browns request attorney fees on appeal pursuant to Idaho Code section 12-120(3) and Idaho Appellate Rule 41 because the sale of the property was a commercial transaction. The Browns also request attorney fees on appeal pursuant to Paragraph 9 of the purchase and sale agreement.

As discussed, Idaho Code section 12-120(3) is applicable because the land transaction was entered into by Greenheart and the Browns for a commercial purpose. Because the Browns are the prevailing party on appeal, the Browns are entitled to attorney fees on appeal pursuant to Idaho Code section 12-120(3).

### V. CONCLUSION

The judgment of the district court is affirmed. The Browns are awarded attorney fees and costs on appeal as the prevailing party.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON, CONCUR.

17