IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 47919

EDWARD A. EASTERLING and JANICE )
EASTERLING, husband and wife, )
 )            Boise, June 2021 Term
    Plaintiffs-Respondents, )
 )            Opinion filed: January 25, 2023
v. )
 )            Melanie Gagnepain, Clerk
HAL PACIFIC PROPERTIES, L.P., a )
California limited partnership registered to )            SUBSTITUTE OPINION, THE
conduct business in the State of Idaho, )            COURT'S PRIOR OPINION
 )            DATED DECEMBER 21, 2021, IS
    Defendant-Appellant. )            WITHDRAWN

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Joel E. Tingey, District Judge.

The judgment of the district court is <u>vacated,</u> its decisions after the bench trial, reconsideration, and summary judgment are <u>reversed,</u> and this case <u>remanded</u> for further proceedings.

Pickens Law, P.A., Boise, for Appellant. Susan A. Kidwell, Pro Hac Vice, argued.

Hall Angell & Associates, LLP, Idaho Falls, for Respondents. Cory Stegelmeier argued.

---

WOOD, Justice Pro Tem.

This case concerns an action brought by two landowners to secure an easement for access to their three merged land-locked parcels. Edward and Janice Easterling (the "Easterlings") own three contiguous parcels of real property in Ammon, Idaho. The Easterlings brought suit against Hal Pacific Properties, L.P. ("HAL"), claiming an easement by necessity over and upon HAL's property (the "HAL Parcel") in order to access their three merged parcels. Following cross-

1

motions for summary judgment, a motion for reconsideration, and a short bench trial, the district court largely ruled in the Easterlings' favor. The district court denied HAL's affirmative defense that the Easterlings' claims were barred by the statute of limitations. The district court further held that the Easterlings were entitled to an easement by necessity over and upon the HAL Parcel to allow access to all three of the Easterlings' merged parcels. The district court placed the easement at the western border of the HAL Parcel and set its width at twenty-six feet.

HAL timely appealed to this Court and contends the district court erred by denying its statute of limitations affirmative defense, granting the Easterlings' claim for an easement by necessity for all three of their parcels, and improperly determining the location and width of the easement.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

The Easterlings own three contiguous parcels of land in Ammon, Idaho (hereinafter specified as the "Southern Parcel," "Eastern Parcel," and "Northern Parcel"). The Easterlings' property is currently landlocked and inaccessible by public road. There are subdivisions to the north and to the west of the Easterlings' property and a railroad track and a canal directly to the east. HAL owns the parcel of land directly to the south of the Easterlings' land. The HAL Parcel borders an arterial road—Sunnyside Road.



The four parcels at issue in this case enjoyed unity of title between 1913 and 1914, and since that time, the parcels have undergone numerous conveyances. Before reciting the conveyances, in part, as relevant to our analysis below, it is useful to depict them in a diagram:



As a preliminary note, Pumice Inc. ("Pumice") is not the same corporation as Producers Pumice, Inc ("Producers"). Instead, Producers is part of the same corporate structure as HAL. Moreover, the Easterlings are officers of Pumice. Edward Easterling became the President of Pumice as early as 1990, and Janice Easterling has been its Secretary/Treasurer since at least 1997.

All four parcels are traceable to the same 1891 Patent Deed that conveyed 160 acres to William F. Owen. By 1913, Owen conveyed to Joseph Anderson what is now the Southern, Northern, Eastern, and HAL Parcels. One year later, in 1914, Anderson, and his wife, conveyed the Northern Parcel to A.E. Empey—severing it from the Southern, Eastern and HAL Parcels. *This is the first significant severance.*

Twenty-five years later, in 1949, the successors to Anderson conveyed the then merged Southern, Eastern, and HAL Parcels to Ernest L. Martin. As depicted in an aerial photograph from 1946, the parcels were agricultural at this time. Five years later, in 1954, Martin conveyed the Southern and Eastern Parcels to Pumice—severing them from the HAL Parcel. *This is the second significant severance*. The record is unclear, but Pumice apparently also purchased the Northern Parcel in or around 1954—merging the Northern, Southern, and Eastern Parcels in fee simple.

Eleven years later, in 1965, Pumice leased the Southern Parcel to Producers who then accessed the property via the Union Pacific Railroad right-of-way for twenty-four years, from 1965 to 1999, without a recorded easement or license allowing that access. In 1999, Producers purchased the HAL Parcel from the Martin Family Trust. Around this same time, the Union Pacific stopped allowing use of the railroad right-of-way to access the Southern Parcel. Producers then removed a fence separating the Southern and HAL Parcels to continue its access from the HAL Parcel to the Southern Parcel it leased.

Five years later, in 2004, Pumice (by and through the Easterlings) terminated Producers' lease to use the Southern Parcel. That same year, Pumice (by and through the Easterlings) conveyed the Southern and Northern Parcels to the Easterlings. Three years later, in 2007, Pumice (by and through the Easterlings) conveyed the Eastern Parcel to F & E Land Company.

Four years after that, in 2011, Producers conveyed the HAL Parcel to PCBP Properties, Inc. which within months reconveyed the HAL Parcel to HAL. Finally, four years later, in 2015, F & E Land Company conveyed the Eastern Parcel to the Easterlings. At this point, the Easterlings owned the Northern, Southern, and Eastern Parcels as merged, and HAL owned the HAL Parcel— setting the stage for this litigation.

## B. Procedural History

After unsuccessful negotiations between the Easterlings and HAL for an express easement over the HAL Parcel, the Easterlings filed a complaint in 2018, asking the district court to declare an easement by necessity across the HAL Parcel. The Easterlings alleged that their property was

4

landlocked, with no ingress or egress available, and requested a sixty-foot-wide easement upon and over the HAL Parcel to connect with Sunnyside Road.

The Easterlings moved for summary judgment, asserting that: (1) their parcels had unity of title with the HAL Parcel; (2) at the time of severance, there was a reasonable necessity for an easement because once severed, there was no access to the Easterling parcels except over the HAL Parcel; and (3) there is great present necessity because there is currently no legal access to the Easterlings' merged parcels.

HAL requested a continuance, which the district court granted. HAL then filed a cross-motion for summary judgment. HAL first asserted that the Easterlings' claim for an easement by necessity was barred by the statute of limitations under Idaho Code section 5-204. In its reply brief, HAL extended the argument to Idaho Code section 5-224, arguing that Idaho's "catch-all" statute of limitations for civil actions applies to easements by necessity. HAL maintained that the four-year catch-all was triggered in 1954 when Pumice acquired the Northern, Southern, and Eastern Parcels. Edward Easterling had signed a declaration purporting personal knowledge that the parcels did not have "legal access" at that time. Thus, section 5-224 barred the Easterlings' claim.

Next, HAL argued that the Easterlings failed to meet their burden to prove an easement by necessity. Specifically, HAL asserts that there was not a reasonable necessity for an easement after severance because the Easterlings could access their property over the railroad tracks or via lands to the north and west of their property. Similarly, HAL claimed the Easterlings failed to show great present necessity for the easement because they have multiple options to ingress and egress their property including using the railroad access or obtaining an easement over another adjacent parcel.

The district court heard argument from the parties regarding their cross-motions for summary judgment. The district court first rejected HAL's affirmative defense that the statute of limitations had run on the Easterlings' easement claim under Idaho Code sections 5-204 and 5-224. The district court found no appellate case in Idaho which had applied a statute of limitations to an easement by necessity claim. Furthermore, the district court reasoned that an easement by necessity "is presumed to exist upon severance of the property"; therefore, "[i]t makes little sense to apply a statute of limitations to an easement that is already presumed to exist." The district court further noted that public policy militated against use of a statute of limitations to defeat an easement by necessity claim. Applying a statute of limitations could result in leaving "property

5

landlocked and without access which, for all intents and purposes, would render the property useless."

Next, the district court turned to the Easterlings' claim for an easement by necessity—but only as to the Southern Parcel—noting there was not enough information in the record to address the Eastern Parcel on summary judgment. The district court began by stating the elements of an easement by necessity: "[i]n order to establish an implied easement by necessity, the claimant must show '(1) unity of title and subsequent separation of the dominant and servient estates; (2) necessity of the easement at the time of severance; and (3) great present necessity for the easement.' " (quoting *Machado v. Ryan*, 153 Idaho 212, 219, 280 P.3d 715, 722 (2012)). The district court did not address the first element, as the parties agreed unity of title was met as to the Southern and HAL Parcels. Turning to the second element, the district court found it was satisfied because the only evidence in the record supported the Easterlings' assertion that there was no legal access to the Southern Parcel when it was severed from the HAL Parcel in 1954. The district court rejected HAL's assertion that the Easterlings could access their Southern Parcel via the railroad because access accomplished through trespass does not defeat the reasonable necessity for an easement. Finally, the district court found that the Easterlings had met their burden on the third element because "[t]he requirement of a great present necessity is satisfied if the easement would be the only access to the claimant's property." The district court, therefore, denied HAL's cross-motion for summary judgment and granted the Easterlings' motion for summary judgment as it related to the Southern Parcel.

Thereafter, the Easterlings filed a motion for reconsideration of the district court's order on summary judgment. The Easterlings supplemented the record with a title search and affidavits showing that unity of title existed at one point between the Eastern and Southern Parcels and the HAL property. The Easterlings then reasserted the same arguments for the remaining two easement-by-necessity elements as they did earlier at summary judgment. The district court agreed, finding the title search established unity between the parcels and that the same legal rationale for the Southern Parcel would apply to the Eastern Parcel. Therefore, it concluded that the remaining elements of an easement by necessity claim were met.

The Easterlings also requested that the district court reconsider its initial refusal to address the width and location of the easement. To support this assertion, the Easterlings attached a declaration from Keith Banda—the Deputy Chief of the Ammon Fire Department. Banda stated

6

that the Ammon City fire code, adopted in 2015, requires "drive aisles" to be twenty-six feet wide in order to accommodate emergency vehicles. In response, HAL argued that aerial photos showed a ten to twelve foot dirt trail across the HAL Parcel to the Easterlings' property; thus, it maintained that the width of the easement should be no more than twelve feet. The Easterlings also argued that the least intrusive, and most logical place for the easement, would be along the western boundary of the HAL Parcel. The district court noted that location of an easement is typically a factual determination; however, HAL remained silent on what it believed to be the best location of the easement. With the record before the district court containing overhead views of the properties, plats, and descriptions, it agreed with the Easterlings and placed the easement at the western edge of the HAL Parcel from Sunnyside Road, running north and south, to the Southern Parcel. The district court, however, continued to refuse to determine the width of the easement because it was a disputed issue of material fact.

The Easterlings brought a second motion for reconsideration. This time, the Easterlings requested reconsideration of the district court's prior determinations as it related to the Northern Parcel. The Easterlings reasserted their request for the width of the easement to be set at twenty-six feet. The district court heard the Easterlings' second motion for reconsideration contemporaneous with a bench trial on January 23, 2020. The district court reiterated the two issues to be resolved at trial: (1) whether the Easterlings' Northern Parcel was entitled to an easement by necessity, and (2) the appropriate width of the easement.

After a succinct bench trial, the district court first determined that the Easterlings had met their burden to show the Northern Parcel was entitled to an easement by necessity. The title search regarding the Northern Parcel revealed that it shared unity with the HAL, Southern, and Eastern Parcels between 1913 and 1914. As to the second and third elements, the district court reincorporated its findings regarding the Southern and Eastern parcels made earlier in the case on summary judgment and reconsideration. Thus, the district court held that the Easterlings had met their burden of proof to establish an easement by necessity to their Northern Parcel. Second, the district court, based largely on the undisputed testimony from Banda's declaration and his deposition, reasoned that the Easterlings would not qualify for any sort of building permit, and thus have no use of the property, unless the easement was at least twenty-six feet wide.

The district court entered a corresponding judgment. HAL timely filed a notice of appeal and challenges the following rulings by the district court: (1) denying HAL's statute of limitations

defense under Idaho Code section 5-224 at summary judgment; (2) awarding summary judgment to the Easterlings and granting an easement by necessity to the Easterlings' Southern Parcel; (3) granting the Easterlings' motion for reconsideration as to the Eastern Parcel; (4) deciding after the bench trial that the Easterlings' Northern Parcel is entitled to an easement by necessity; and (5) determining the location and width of the easement.

## II. STANDARD OF REVIEW

"This Court exercises de novo review of a grant of summary judgment and the 'standard of review is the same as the standard used by the trial court in ruling on the motion for summary judgment.' " *AED, Inc. v. KDC Invest, LLC,* 155 Idaho 159, 163, 307 P.3d 176, 180 (2013) (quoting *Stonebrook Const., LLC v. Chase Home Fin., LLC,* 152 Idaho 927, 929, 277 P.3d 374, 376 (2012)). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). A material fact exists when a reasonable jury could return a verdict for the non-moving party based on the evidence presented. *Marek v. Hecla, Ltd.,* 161 Idaho 211, 220, 384 P.3d 975, 984 (2016). "This Court liberally construes the record in favor of the party opposing the motion for summary judgment and draws any reasonable inferences and conclusions in that party's favor." *Robinson v. Bateman-Hall, Inc.,* 139 Idaho 207, 209, 76 P.3d 951, 953, (2003).

This Court reviews a district court's decision on a motion for reconsideration using the same standard of review the lower court used when deciding the motion. *Monitor Finance, L.C. v. Wildlife Ridge Estates, LLC*, 164 Idaho 555, 433 P.3d 183 (2019).

The applicable standard of review regarding a trial court's factual findings and legal conclusions after a bench trial was explained in *Caldwell Land and Cattle, LLC v. Johnson Thermal Systems, Inc.*:

> Review of a trial court's conclusions following a bench trial is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. *Borah v. McCandles*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009) (citing *Benninger v. Derifield*, 142 Idaho 486, 488-89, 129 P.3d 1235, 1237-38 (2006)). This Court will not set aside a trial court's findings of fact unless the findings are clearly erroneous. *Id.* Clear error will not be deemed to exist if the findings are supported by substantial and competent, though conflicting, evidence. *Mortensen v. Berian*, 163 Idaho 47, 50, 408 P.3d 45, 48 (2017) (quoting *Pandrea v. Barrett*, 160 Idaho 165, 171, 369 P.3d 943, 949 (2016)). Substantial and competent evidence exists [i]f there is evidence in the record that a reasonable trier of fact could accept and rely upon in making the factual finding challenged on appeal . . . . *Id.*

8

165 Idaho 787, 795, 452 P.3d 809, 817 (2019) (internal quotations omitted).

## III. ANALYSIS

### A. The "catch-all" statute of limitations for civil actions in Idaho Code section 5-224 applies to easement by necessity claims.

HAL contends the district court erred by deciding at summary judgment that the Easterlings' claim to an easement by necessity was not barred by a statute of limitations. While initially including Idaho Code sections 5-204 and -224 in its analysis, on appeal HAL has narrowed its argument to assert that the Easterlings' claim is barred by the "catch-all" statute of limitations for civil actions under section 5-224.

As explained above, the district court declined to apply section 5-224 to the Easterlings' easement by necessity claim after pointing to its common law origin and attendant public policy considerations. On appeal, HAL argues that a plain reading of section 5-224 requires its application to easement by necessity claims. Of note, we do not *sua sponte* address statute of limitation defenses; they must be pleaded, preserved for appeal, and raised on appeal. *See Hawley v. Green*, 117 Idaho 498, 504, 788 P.2d 1321, 1327 (1990); *State v. Hoskins*, 165 Idaho 217, 222, 443 P.3d 231, 236 (2019). Here, the Easterlings argue that this Court has previously declined to apply a statute of limitations defense to easement by necessity claims. However, at no point do any of the cases cited by the Easterlings discuss that any party ever raised, preserved, or argued a statute of limitations defense to an easement by necessity claim. *See, e.g.*, *Backman v. Lawrence*, 147 Idaho 390, 394–95, 210 P.3d 75, 79–80 (2009); *MacCaskill v. Ebbert*, 112 Idaho 1115, 1118–1122, 739 P.2d 414, 417–421 (Ct. App. 1987); *Brown v. Miller*, 140 Idaho 439, 442, 95 P.3d 57, 60 (2004); *B & J Dev. & Inv., Inc. v. Parsons*, 126 Idaho 504, 507, 887 P.2d 49, 52 (Ct. App. 1994); *Machado v. Ryan*, 153 Idaho 212, 219–20, 280 P.3d 715, 722–23 (2012). In fact, no party before HAL— since 1881 when section 5-224 was enacted—has pleaded this particular statute of limitations defense, preserved it for appeal, and raised it on appeal so that we might address it. In other words, we have never faced this question, thus, it has not been settled for "over 150 years" as the dissent suggests. Instead, this is an issue of first impression.

For the reasons discussed below, we hold that the statute of limitations in Idaho Code section 5-224 applies to easement by necessity claims such that the right to an easement by necessity, which arises at the time of severance, will be extinguished if the four-year period under the statute has accrued and run. We further hold that easement by necessity claims are within the

purview of Idaho's broad quiet title statute, Idaho Code section 6-401, and do not accrue, for purposes of section 5-224, at severance. Instead, accrual will occur when the landlocked owner—or *any* of the predecessors-in-interest—knew, or reasonably should have known, that another made a claim "adverse to" the parcel's right to an easement by necessity.

Accordingly, we reverse the district court's decision denying HAL's statute of limitations defense. Because of this, we also vacate the district court's judgment and reverse its decisions, as discussed below, reached after the bench trial, on reconsideration, and at summary judgment. We remand this case for further proceedings.

To determine if easement by necessity claims are subject to a statute of limitations, we begin with the plain language of the statutes relevant to our discussion. *See State v. Gomez-Alas*, 167 Idaho 857, 862, 477 P.3d 911, 916 (2020). These statutes operate in unison and are set out under Idaho Code sections 5-201, -224, and -228. First, Idaho Code section 5-201 provides: "Civil actions can only be commenced within the periods prescribed in this chapter after the cause of action shall have accrued, except when, in special cases, a different limitation is prescribed by statute." Next, Idaho Code section 5-224 provides: "An action for relief not hereinbefore provided for must be commenced within four (4) years after the cause of action shall have accrued." Finally, Idaho Code section 5-228 provides: "An action is commenced within the meaning of the chapter when the complaint is filed."

"It may be agreed, where legislative language is ambiguous, and other rules of statutory construction do not control, the Court should consider social and economic results." *Herndon v. West*, 87 Idaho 335, 339, 393 P.2d 35, 37 (1964). However, we have consistently held that if statutory language is unambiguous, "courts must give effect to the legislature's clearly expressed intent without engaging in statutory construction." *Saint Alphonsus Reg'l Med. Ctr. v. Gooding Cnty.*, 159 Idaho 84, 87, 356 P.3d 377, 380 (2015); *see also Gomez-Alas*, 167 Idaho at 862, 477 P.3d at 916; *State v. Osborn*, 165 Idaho 627, 629, 449 P.3d 419, 421 (2019). If "[a] statute is not ambiguous, [then the] Court does not construe it, but simply follows the law as written." *State v. Schwartz*, 139 Idaho 360, 362, 79 P.3d 719, 721 (2003).

Here, section 5-224 is not ambiguous. It unequivocally provides the statute of limitations for "*all* [civil] actions not specifically provided for in another *statute*." *McCuskey v. Canyon County Com'rs*, 128 Idaho 213, 216, 912 P.2d 100, 103 (1996) (emphasis added). Section 5-224 has been aptly dubbed the "catch-all" statute of limitations for civil actions in Idaho because it

10

does just that—it catches all (not otherwise provided for) without requiring the legislature to enumerate individual statutes of limitation for every possible cause of action. *See C & G, Inc. v. Canyon Highway Dist. No. 4*, 139 Idaho 140, 147, 75 P.3d 194, 201 (2003). Easement by necessity claims are not otherwise provided for in another statute. Thus, by its plain language, Idaho Code section 5-224 applies to easement by necessity claims.

Moreover, the "catch-all" in section 5-224 abrogated any common law rule, if one ever existed in Idaho, that easement by necessity claims cannot be, or never are, time barred. "Where the clear implication of a legislative act is to change the common law rule [the Court] recognize[s] the modification because the legislature has the power to abrogate the common law." *McCann v. McCann*, 152 Idaho 809, 818, 275 P.3d 824, 833 (2012). Although the rules of common law are not to be changed by "doubtful" implication, if the implication is "obvious" it "cannot be ignored." *Statewide Constr., Inc. v. Pietri*, 150 Idaho 423, 429, 247 P.3d 650, 656 (2011), *abrogated on other grounds by Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 895, 265 P.3d 502, 508 (2011).

Importantly, the statute in question does not need to explicitly abrogate the common law rule it replaces to be of "obvious" implication. *See, e.g.*, *Mickelsen v. Broadway Ford, Inc.*, 153 Idaho 149, 153, 280 P.3d 176, 180 (2012) (holding that Idaho's codification of the Uniform Commercial Code for leases abrogated the common law actions of fraud and material misrepresentation despite not mentioning as much). However, we will presume that the legislature did not intend to modify the common law "unless the language of the statute clearly indicates the legislature's intent to do so." *Thomson v. City of Lewiston*, 137 Idaho 473, 478, 50 P.3d 488, 493 (2002).

Here, reading Idaho Code sections 5-201, 5-224, and 5-228 in tandem leads to the "obvious" implication that the legislature intended to abrogate any common law rule (again, if one ever existed) that limitation periods do not, or should not, apply to easement by necessity claims. To say otherwise would render Idaho's "catch-all" statute of limitations under section 5-224 a nullity and partially void—contrary to Idaho's long held jurisprudence of statutory interpretation. *See Hecla Mining Co. v. Idaho State Tax Comm'n*, 108 Idaho 147, 151, 697 P.2d 111, 1165 (1985) ("[I]t is incumbent upon a court to give a statute an interpretation that will not render it a nullity."); *Gooding Cnty.*, 159 Idaho at 87, 356 P.3d at 380 ("The Court must give effect to all the words and provisions of [a] statute" so that no part will be "void, superfluous, or redundant.").

11

To be sure, some non-binding authorities suggest that "one who asserts a dormant easement of necessity cannot be thwarted by a statute of limitations or the defense of laches." § 4:12. Easements of necessity—Requirements—Continuing necessity, THE LAW OF EASEMENTS & LICENSES IN LAND § 4:12 (2021); *see also* RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 2.15 (2000) ("Although the necessity must exist at the time of severance, there is no time limit on when the easement may be claimed."). In addition, the dissent points to instances where other states have exempted easement by necessity claims from any limitations period.

However, we will reject non-binding authorities, such as the Restatement, when they do not "fit the needs of Idaho jurisprudence." *Peterson v. Idaho First Nat. Bank*, 117 Idaho 724, 726, 791 P.2d 1303, 1305 (1990). We do that here. Reading section 5-224 to be consistent with these non-binding authorities would judicially *amend* Idaho's "catch-all" statute into a "catch-some" statute of limitations. More importantly, with such a reading, only the Idaho Judiciary would know which causes of action would fit the "catch some" provision. This is irreconcilable with our recent reaffirmation that "it is the province of the legislature to make and amend laws and [the] Court lacks the authority to amend laws enacted by the legislature." *In Re Doe*, 168 Idaho 511, __, 484 P.3d 195, 200 (2021). Furthermore, the opinions of other states on this issue are of no consequence because we are interpreting a *specific* statute of limitations not enacted in any of those states—Idaho Code section 5-224.

Idaho's "catch-all" statute of limitations, currently codified in section 5-224 of the Idaho Code, was first enacted in 1881 by the Territory of Idaho in section 164 of the Code of Civil Procedure. Its language has not changed since its enactment in 1881, and we have never exempted easement by necessity claims from its control (nor could we as explained above). Moreover, at no point since then has the legislature enacted a specific period of limitations for easement by necessity claims. If it had wished to do so, the legislature could have exempted easement by necessity claims from the control of section 5-224; excluded such claims from any limitation period altogether; or specifically provided the claim with a different limitation period in another statute. *See, e.g.*, I.C. § 5-246 (providing for prescriptive overflow easements). Despite having enacted many statutory exceptions to section 5-224 in Chapter 2 of Title 5 of the Idaho Code for other matters since 1881, as explained by the dissent, the legislature has not done so for easements by necessity. The only prerogative for the legislature, where a catch-all operates in the background, is to expressly exempt, or provide for, a statute of limitations where the *legislature* deems fit.

12

From the above, it necessarily follows that any public policy implications resulting from applying a statute of limitations is a matter for the Idaho legislature. *See Berry v. Koehler*, 84 Idaho 170, 177, 369 P.2d 1010, 1013 (1961). To be sure, the easement by necessity "is of common-law origin and is supported by the rule of sound public policy that lands should not be rendered unfit for occupancy or successful cultivation[.]" *Backman v. Lawrence*, 147 Idaho 390, 395, 210 P.3d 75, 80 (2009) (quoting *Burley Brick & Sand Co. v. Cofer*, 102 Idaho 333, 335, 629 P.2d 1166, 1168 (1981)). Moreover, we have said that "Idaho public policy favors the full use of lands[.]" *Backman*, 147 Idaho at 395, 210 P.3d at 80.

However, we will not extend our general policy favoring "full use" of lands so that it *ad infinitum* favors the landlocked owner—over the owner to be burdened—when the legislature left no room for us to pen any exception to the "catch-all" in section 5-224. *See Verska*, 151 Idaho at 892, 265 P.3d at 505 (rejecting a plaintiff's proposed exception to the peer review privilege statute when the statute left no room—even under "the rubric of public policy"—to adopt the proposed exception). "The wisdom, justice, policy, or expediency of a statute are questions for the legislature alone." *Berry*, 84 Idaho at 177, 369 P.2d at 1013.

Once this is understood, it is clear the common law roots for easement by necessity claims do not override the clearly expressed intent of the legislature in section 5-224 to impose a statute of limitations upon *all* civil actions not "specifically provided for" in another statute. *See McCuskey*, 128 Idaho at 216, 912 P.2d at 103. "The public policy of legislative enactments cannot be questioned by the courts and avoided simply because the courts might not agree with the public policy so announced." *State v. Vill. of Garden City*, 74 Idaho 513, 525, 265 P.2d 328, 334 (1953).

Nonetheless, the dissent disagrees with our holding today based on public policy grounds. The dissent casts our opinion as effectually rendering the Easterlings' land "useless" in contravention to "Idaho's clear public policy" to use Idaho's lands "to its fullest[.]" However, the truth of the dissent's position presupposes the dissent's own notion that using land to the "fullest" means the interests of landlocked owners *always* trumps the interests of others. Instead, there are numerous competing interests at stake.

First, the dissent maintains that applying a statute of limitations will preclude "full use" of an owner's landlocked parcel. However, as illustrated in the case at hand, granting an easement by necessity across the HAL Parcel so that the Easterlings can develop their Parcels also necessarily means that HAL is denied "full use" of its land because now it will be burdened by an easement.

13

Second, the dissent favors the "full use" of landlocked parcels by exempting easement by necessity claims from *any* period of limitations. However, this comes at the price of imputing clouds onto the title of any parcel contiguous with the landlocked parcel if that parcel, *at any point*, shared unity of title with the landlocked parcel. Under the dissent's position, until judicial adjudication occurs, it is perpetually unclear whether an easement by necessity will ever be granted—and on whose parcel it will sit. This results in an indefinite cloud on nearly every parcel contiguous to a landlocked parcel. Thus, the dissent's policy of "full use" imputes unmeasurable costs onto owners whose property is contiguous with a landlocked parcel for the benefit of landlocked parcel owners.

Third, that a parcel is landlocked does not necessarily mean it is "useless" and unable to be developed as the dissent maintains. Rather, development may occur by a new owner of the landlocked parcel, i.e., the owner of a contiguous parcel may acquire the landlocked parcel and access it through their contiguous parcel. Presumably, the fair market value of a landlocked parcel will be governed in part by the lack of established access *and* can be developed accordingly by subsequent owners. If a landlocked parcel is worth developing, then it is clearly foreseeable that purchasing the necessary easement across a servient estate would likely be economically viable.

Moreover, if an express easement cannot be purchased, this does not foreclose the landlocked owner from establishing an easement through a private action of eminent domain. *See* I.C. §§ 7-701 to -721. The legislature has provided this remedy for landlocked owners who seek to, for instance, develop or exploit the natural resources of Idaho for the benefit and use of the public. *See, e.g.*, *McKenny v. Anselmo*, 91 Idaho 118, 122–23, 416 P.2d 509, 513–14 (1966) (farming); *Blackwell Lumber Co. v. Empire Mill Co.*, 28 Idaho 556, 558, 155 P. 680, 684 (1916) (logging roads); *Yellowstone Pipe Line Co. v. Drummond*, 77 Idaho 36, 44, 287 P.2d 288, 293 (1955) (pipelines); *Potlatch Lumber Co. v. Peterson*, 12 Idaho 769, 775, 88 P. 426, 427 (1906) (condemning twelve acres of private land for use as a storage reservoir for logging).

Finally, the dissent's policy of "full use" unfairly prejudices the last owner to develop. For example, in this case, the Easterlings, and their predecessors-in-interest (Pumice), apparently did nothing from the time the HAL Parcel was severed in 1954 to ensure legal access to the Northern, Southern, and Eastern Parcels. Instead, they sat on their rights, all the while a subdivision was developed that foreclosed the possibility of an express easement to the west. Now, the Easterlings argue for an easement by necessity over the last contiguous and undeveloped parcel—the HAL

14

Parcel. Had HAL developed a subdivision sooner—instead of devoting its land to agricultural uses—it may have avoided the easement the dissent would impose. The dissent's policy would force an owner making *productive* use of their land (e.g., farming), as opposed to other types of development (e.g., residential), to suffer an easement for the benefit of a landlocked owner who watched other easement opportunities pass them by.

These countervailing policy considerations highlight merely *some* of the competing policies at stake without advancing which should be adopted over the other. We follow the law as written, and "if it is socially or economically unsound, the power to correct it is legislative, not judicial." *Herndon*, 87 Idaho at 339, 393 P.2d at 37. Because section 5-224 applies to easement by necessity claims, the Idaho legislature is the proper branch of government to determine what "full use" of Idaho land should mean in this context. To be clear, we do not find or intimate that section 5-224 as written "is" socially or economically unsound; rather, it is what it is—a legislative policy that favors the finality of property rights in Idaho.

In sum, by its plain and unambiguous language, Idaho code section 5-224 applies to easement by necessity claims. Here, HAL pleaded and argued a statute of limitations defense under section 5-224 against the Easterlings' easement by necessity claim. Thus, the district court erred as a matter of law in rejecting HAL's statute of limitations defense at summary judgment.

**1. Accrual of easement by necessity claims and extinguishment under section 5-224.**

In light of the above, it is necessary for us to also address how the right to an easement by necessity may accrue and be extinguished by operation of section 5-224. The law applicable to answering this question is set out through an understanding of our quiet title statute, Idaho Code section 6-401, and *Brown v. Greenheart*, 157 Idaho 156, 335 P.3d 1 (2014) where we supplied the accrual standard for quiet title actions. However, before discussing why easement by necessity claims are within the purview of our quiet title statute, it is necessary to clarify two matters looming in the background.

**a. A *right* to an easement by necessity "arises" at severance.**

The district court's treatment of easements by necessity confused the existence of an easement *in fact* with the *right* to an easement by necessity. This case does not deal with an express easement that exists in fact with fully enforceable rights. Instead, we are addressing the *right* to an easement (by necessity), and whether the Easterlings' may now—through their suit filed in February 2018—enforce this right or whether the right has been extinguished in whole or part.

15

In *Burley Brick and Sand Co. v. Cofer*, we dealt with the theory underlying easements by necessity, and explained that a *right* to an easement by necessity arises at severance. 102 Idaho 333, 335, 629 P.2d 1166, 1168 (1981). The "legal basis" for this right is "the presumption of a grant [or reservation] arising from the circumstances of the case." *Burley Brick and Sand Co.*, 102 Idaho at 335, 629 P.2d at 1168 (emphasis added). The claim is of common law origin and the "rule of sound public policy that lands should not be rendered unfit for occupancy or successful cultivation" explains *why* we recognize right, but public policy, contrary to the dissent's explanation below, is *not* the "legal basis" for the right. *Id*. It merely "supports" a reason for the right at common law. *See Backman*, 147 Idaho at 395, 210 P.3d at 80; *Burley Brick & Sand Co.*, 102 Idaho at 335, 629 P.2d at 1168.

More specifically, the *right* to an easement by necessity is synonymous with a *right* to a "presumption" implying evidence of the parties intent at severance to grant, or reserve, an easement notwithstanding its absence in the terms of the conveyance. *Burley Brick and Sand Co.*, 102 Idaho at 335, 629 P.2d at 1168. "Such a way is the result of the application of the presumption that whenever a party conveys property, he conveys whatever is necessary for the beneficial use of that property and retains whatever is necessary for the beneficial use of land he still possesses." *Id*. The easement by necessity is not *automatically implied in fact* at severance as the dissent maintains. Instead, whether the grant, or reservation, *should be implied in fact* depends upon the terms of the deed and the facts in each particular case. *See id*.

We have repeatedly approved of this theory behind easement by necessity claims on the occasions we have had to discuss it. *See Backman v. Lawrence*, 147 Idaho 390, 394–95, 210 P.3d 75, 79–80 (2009); *Hughes v. Fisher*, 142 Idaho 474, 482–83, 129 P.3d 1223, 1231–32 (2006); *Burley Brick and Sand Co.*, 102 Idaho at 335, 629 P.2d at 1168; *Shultz v. Atkins*, 97 Idaho 770, 773, 554 P.2d 948, 951 (1976); *Close v. Rensink*, 95 Idaho 72, 76, 501 P.2d 1383, 1387 (1972).

Moreover, courts in both England and the United States, since the nineteenth century, have characterized the easement by necessity in the same manner—i.e., as a "legal fiction" arising at severance that presumes an implied intent of the parties. Easements of necessity—Underlying theories, THE LAW OF EASEMENTS & LICENSES IN LAND § 4:5; *see, e.g.*, *Richards v. Attleboro Branch R. Co.*, 26 N.E. 418, 419 (Mass. 1891); *Wells v. Garbutt*, 30 N.E. 978, 980 (N.Y. 1892); *Mitchell v. Seipel*, 53 Md. 251, 264 (1880); *Brown v. Burkenmeyer*, 39 Ky. 159, 161 (1839); *McDonald v. Lindall*, 3 Rawle 492, 494–95, 1827 WL 2633, at *4 (Pa. 1827); *O'Rorke v. Smith*,

11 R.I. 259, 262 (1875); *Dillman v. Hoffman*, 38 Wis. 559, 572 (1875); *Shoemaker v. Shoemaker*, 11 Abb. N. Cas. 80, 82–84 (N.Y. Sup. Ct. 1882) (discussing English cases).

Therefore, an easement by necessity does not "arise" upon severance in the sense of immediately *creating* an enforceable easement *in fact*. *See Burley Brick and Sand Co.*, 102 Idaho at 335, 629 P.2d at 1168. "Necessity of itself does not *create* a right of way; it is merely a fact offered into evidence to show an intention to establish a right of way by raising the presumption of a grant [or reservation]." *Shpak v. Oletsky*, 373 A.2d 1234, 1238 (Md. 1977); *see also* Jones, Easements § 304 (1898) (stating the same). Instead, it is a *right* that remains a dormant legal fiction unless, or until, a judgment establishes its existence and enforceability in fact; the necessity ends; *or the statute of limitations in section 5-224 extinguishes the right and bars any claim to seek its existence in fact. See* 28A C.J.S. *Easements* § 141. Only a court's judgment can transform the easement by necessity fiction into an enforceable property interest. *See Carstensen v. Chrisland Corp.*, 442 S.E.2d 660, 665 (Va. 1994); *Woodle v. Commonwealth Land Title Ins. Co.*, 844 N.W.2d 806, 814 (Neb. 2014). In other words, easements by necessity do not come into existence until a court order recognizes their existence.

Here, the "catch-all" statute of limitations in section 5-224 operates to extinguish the *right* to an easement by necessity—it does not extinguish an easement that already exists in fact. The district court erred as a matter of law when it conflated this distinction in denying HAL's statute of limitations defense.

**b. The doctrine of merger applies to easement by necessity claims.**

The district court improperly treated the Northern, Southern, and Eastern Parcels as *separately* enjoying multiple rights to an easement by necessity despite their merger in fee simple by the Easterlings as of 2015 and earlier (by their merger of the Northern and Southern Parcels in 2004). Under the merger doctrine, when land burdened by an easement and land benefited by an easement come into common ownership in fee simple, the need for an easement is destroyed and the easement is extinguished. *See Ulrich v. Bach*, 155 Idaho 249, 251 n.1, 308 P.3d 1232, 1234 n.1 (2013). Although the merger doctrine typically deals with easements already existing in fact (e.g., express easements), its fundamental principles still apply to the *right* to an easement by necessity. Otherwise, the elementary principle of real property law that one cannot have an easement in his or her own lands would be offended. *See Capstar Radio Operating Co. v.*

*Lawrence*, 153 Idaho 411, 420, 283 P.3d 728, 737 (2012); *Johnson v. Gustafson*, 49 Idaho 376, 288 P. 427, 429 (1930).

Furthermore, the right to an easement by necessity is appurtenant to the dominant estate. *Cf. Beach Lateral Water Users Ass'n v. Harrison*, 142 Idaho 600, 604, 130 P.3d 1138, 1142 (2006) ("An easement implied from prior use is an easement appurtenant to the dominant estate."). An easement "appurtenant" is an easement whose benefits serve, and are attached to, the land—not a particular person or owner. *Abbot v. Nampa School Dist. No. 131*, 119 Idaho 544, 550, 808 P.2d 1289, 1295 (1991). "More exactly, it serves the owner of that land in a way that cannot be separated from his rights in the land. It in fact becomes a right in that land . . . [that] passes with the title." *Id.* (quoting R. Cunningham, W. Stoebuck and D. Whitman, *The Law of Property* § 8.2, 440 (Hornbook Series Lawyer's Edition (1984)). Because of this, accrual may occur against the landlocked owner bringing the easement by necessity claim—or have already occurred against the predecessors-in-interest—to the extent either knew, or reasonably should have known, of another's claim "adverse to" the right. *See also McFarland v. Norton*, 425 F.3d 724, 727 (9th Cir. 2005); *Michel v. U.S.*, 65 F.3d 130, 131 (9th Cir. 1995) (following a similar standard for quiet title actions under 28 U.S.C. § 2409a(g)). Once the right is extinguished by operation of section 5-224, it is gone forever for purposes of every successor-in-interest as to *that parcel* (unless it is recreated de novo). *See* 28A C.J.S. *Easements* § 141. Thus, the current owner bringing a claim for easement by necessity cannot resurrect the right where it was previously extinguished.

This brings us to three hypotheticals under which accrual for easements by necessity will operate: (1) accrual and extinguishment occurred against a predecessor-in-interest; (2) accrual began against a predecessor-in-interest and continued against the current owner; or (3) accrual occurred against the current owner. Here, one or more of these hypotheticals may be in play depending on the facts developed upon remand.

First, accrual may have occurred against the current landlocked owner's predecessor-in-interest *any time* four years prior—*or more*—to the current owner claiming an easement by necessity. If this occurred, the four-year statute of limitations under section 5-224 extinguished the right to an easement by necessity for all successors-in-interest (including the current owner bringing suit). The current owner's knowledge of whether extinguishment occurred during a predecessor's ownership of the parcel(s) is irrelevant because the right is appurtenant to the land. For example, in 1960, Pumice, predecessor-in-interest to the Easterlings, owned in fee simple the

merged Northern, Southern, and Eastern Parcels. If another party, for instance, erected a fence that blocked Pumice's access to Sunnyside Road across the HAL Parcel in 1960, then Pumice has reason to know of a claim by another adverse to the merged parcels' right to an easement by necessity *over the HAL Parcel*. If Pumice does not file a complaint by 1964, the statute of limitations will run under section 5-224 and that right—as to all three merged parcels—is forever extinguished. The Easterlings cannot resurrect that right—as to any of the parcels—by purchasing the Southern and Northern Parcels from Pumice in 2004. In this hypothetical, the parcels' right (then merged in Pumice), as to an easement by necessity *over the HAL Parcel*, would be forever extinguished in 1964. *See* 28A C.J.S. *Easements* § 141.

Second, accrual may have occurred against the current landlocked owner's predecessor-in-interest *less than* four years from the current owner commencing an action claiming the right to an easement by necessity. In this hypothetical, a claim by another against the predecessor triggered accrual and set in motion the four-year clock under section 5-224—but the current owner purchased the landlocked parcel *before* the clock ran. Nevertheless, conveyance to the current owner does not re-set, stop, or change the clock because the period the clock ran against the predecessor follows the land and is imputed to the successor—similar to how tacking operates in easements by prescription. *See Hodgins v. Sales*, 139 Idaho 225, 229–30, 76 P.3d 969, 973–74 (2003).

Under an easement by prescription claim, tacking is used as a sword by the party claiming an easement to tack the requisite period of adverse use by predecessors to the current owner's adverse use to carve out an easement *without* the current owner having to satisfy the full twenty-year period themself. *See Lemhi Cty. v. Moulton*, 163 Idaho 404, 408, 414 P.3d 226, 230 (2018) (citing I.C. § 5-203); *Hodgins*, 139 Idaho at 230, 76 P.3d at 974. Tacking by successors in interest for purposes of an easement by prescription is permissible when the easement is attached to the property itself (i.e., appurtenant) and not when it is merely attached as a personal benefit to an individual (i.e., in gross). *Hodgins*, 139 Idaho at 229–30, 76 P.3d at 973–74.

Because the right to an easement by necessity is also attached (appurtenant) to the land, the period a clock has run against a predecessor is imputed to a successor-in-interest. Otherwise, the owner of a landlocked parcel could reset the statute of limitations by merely reconveying his or her landlocked parcel before the four years under section 5-224 runs—defeating the purpose of a statute of limitations altogether. For example, *if* accrual occurred against Pumice in 2002, the four-

19

year clock under section 5-224 would continue to run against the Easterlings when they purchased the Northern and Southern Parcels from Pumice two years later, in 2004. In this hypothetical, the Easterlings would have roughly two years to commence an action claiming the right to an easement by necessity or the right (as to the merged Northern and Southern Parcels) would be extinguished by operation of section 5-224 in 2006.

Third, and finally, accrual may have occurred against the current landlocked owner bringing the suit. In this case, if the four-year period under section 5-224 runs before the current owner files suit—the right is extinguished by operation of law and the suit is barred. For example, *if* accrual occurred against the Easterlings in 2005, when they owned the merged Northern and Southern Parcels, then the right to an easement by necessity (as to those merged parcels) was extinguished in 2009 when the four-year period under section 5-224 ran. The Easterlings' purchase of the Eastern Parcel in 2015 would not revive the extinguished right as to the merged Northern and Southern Parcels. Instead, at that point, the Easterlings would only be able to claim an easement by necessity as to the *Eastern Parcel over the HAL Parcel*.

In sum, the district court erred because it could not have, as a matter of law, granted the proposed easement it did, at the location it did (running from the Southern Parcel to Sunnyside Road), without determining whether section 5-224 extinguished the right to an easement by necessity for any of the Easterlings' parcels individually, or when merged. The question of accrual is a factual one, to be determined upon remand by the district court.

### c. Easement by necessity claims are within the broad purview of our quiet title statute, Idaho Code section 6-401, thus, it sets the accrual standard.

With these concepts clarified, we turn to defining the accrual standard under Idaho Code section 5-224 for easement by necessity claims. The Easterlings' claim to an easement by necessity is—in substance—an action to quiet title under Idaho Code section 6-401. Section 6-401 sets forth the cause of action:

> *An action may be brought by any person against another who claims an estate or interest in real or personal property adverse to him, for the purpose of determining such adverse claim*, provided that all actions to adjudicate water rights and obtain a decree as to water source, quantity, point of diversion, place of use, nature of use, period of use, and priority against other water users shall be brought under the provisions of chapter 14, title 42, Idaho Code.

I.C. § 6-401 (emphasis added).

20

Except for the addition of personal property by amendment in 1937, and the exclusion of water rights, "this statute is the same now as it was when first adopted by the territorial legislature in 1881." *Anderson v. Whipple*, 71 Idaho 112, 121, 227 P.2d 351, 356 (1951), *overruled on other grounds by David Steed & Assocs., Inc. v. Young*, 115 Idaho 247, 766 P.2d 717 (1988). Moreover, Idaho abolished the distinction between disputes in equity versus law, entrusting our district courts with the power to settle real property disputes regardless of form. *Coleman v. Jaggers*, 12 Idaho 125, 131–32, 85 P. 894, 897–98 (1906); Idaho Const. art. V, §§ 1, 20. Free from cumbersome relics known to the division of law and equity, a litigant can now, through Idaho's quiet title statute, "immediately, upon knowledge of such claim, require the nature and character of the adverse estate or interest to be produced, exposed and judicially determined, and the question of title be thus forever quieted." *Coleman*, 12 Idaho at 130–31, 85 P. at 896–97; *see also Bennet v. Bank of Eastern Oregon*, 167 Idaho 481, 493 n.11, 472 P.3d 1125, 1137 n.11 (2020). As such, our quiet title statute, "is a remedial statute supplementing, more than replacing, common-law and equity-based jurisprudence; hence, it should be broadly construed." *Bennet,* 167 Idaho at 493, 472 P.3d at 1137.

To be sure, the Easterlings' claim to an easement by necessity is of common law origin predating the 1881 enactment of Idaho's quiet title statute. *See Backman*, 147 Idaho at 210 P.3d at 80. However, the analysis does not stop here. Like section 5-224 abrogated any rule to the contrary at common law, Idaho's quiet title statute, Idaho Code section 6-401, supplements the common law easement by necessity claim and overrides the common law where it conflicts. We have consistently interpreted Idaho's quiet title statute as capable of settling adverse disputes over "*every* estate or interest known to real property." *Lewiston Lime Co. v. Barney*, 87 Idaho 462, 468, 394 P.2d 323, 326 (1964) (emphasis added); *see also Dickerson v. Brewster*, 88 Idaho 330, 335, 339 P.2d 407, 410 (1965); *Coleman*, 12 Idaho at 130–31, 85 P. at 897. Easements are real property in Idaho. *Beasley v. Engstrom,* 31 Idaho 14, 15, 168 P. 1145, 1146 (1917). Thus, the implication here is obvious: the common law claim for an easement by necessity, seeking to settle an interest known to real property, is within the purview of our quiet title statute, Idaho Code section 6-401.

Here, the Easterlings' claim an easement by necessity over the HAL Parcel to benefit the Easterlings' parcels as merged (the Northern, Southern, and Eastern Parcels). HAL, the owner of the HAL Parcel, disputes this claim. Thus, the Easterlings' easement by necessity claim is within the purview of Idaho's quiet title statute, Idaho Code section 6-401, to settle this adverse real property dispute.

Understanding that this is a quiet title action in substance, we can now address the accrual standard for easement by necessity claims under Idaho Code section 5-224. We previously held in *Brown v. Greenheart* that the four-year statute of limitations set forth in section 5-224 governs quiet title actions. 157 Idaho 156, 162, 335 P.3d 1, 7 (2014). We also addressed the accrual standard to be applied, holding "[t]he cause of action for quiet title accrues where another person claims an interest in property *'adverse to'* another." *Id*. (emphasis added). Because easement by necessity claims are within the purview of our quiet title statute, the accrual standard in *Greenheart* applies to easement by necessity claims. Importantly, severance itself will not trigger accrual because severance alone does not constitute a claim—by another—"adverse to" the right to an easement by necessity. For accrual to occur, there must be some action, by another, claiming an interest "adverse to" the right. *Id*.

2. **Applying section 5-224 to the Easterlings' claim for an easement by necessity requires remand to determine undeveloped issues of material fact.**

In light of the above principles, this case is remanded for a factual determination over whether accrual and extinguishment under section 5-224 occurred against any of the Easterlings' parcels, individually or when merged. As the Court of Appeals aptly noted: "Few things are as certain as death, taxes, and the legal entanglement that follows a sale of landlocked real estate." *Bob Daniels & Sons v. Weaver*, 106 Idaho 535, 538, 681 P.2d 1010, 1013 (Ct. App. 1984). Here, the numerous conveyances involving the four parcels at issue in this case have created a difficult entanglement over deciding if, and when, accrual occurred as to none, one, some, or all of the Easterlings' parcels—when merged or otherwise—including whether the accrual occurred at the time the respective parcel(s) were owned by a predecessor-in-interest.

We diagramed and recited merely *some* of these conveyances above. Our diagram and recitation of conveyances is not determinative of the relevant conveyances for deciding accrual upon remand. Nevertheless, we can somewhat narrow the inquiry by pointing out the undisputed facts and providing *some* lenses through which the parties *may* develop the facts for the district court to decide the statute of limitations issue after remand.

First, all four parcels enjoyed unity of title between 1913 and 1914. The Northern Parcel was severed from what is now the Southern, Eastern, and HAL Parcels in 1914. This gave rise to the Northern Parcel's right to an easement by necessity over and across the then merged Southern, Eastern and HAL Parcels to Sunnyside Road—some 104 years *before* the Easterlings filed this lawsuit. This is one lens of analysis, illustrating the first hypothetical described *supra*, for whether

22

accrual and extinguishment occurred as to the Northern Parcel's right when it was owned independently by a predecessor of the Easterlings.

Second, in 1954, the Southern and Eastern Parcels were severed by Pumice from the HAL Parcel—merging in Pumice with its added purchase of the Northern Parcel that year—some 64 years *before* the Easterlings filed this lawsuit. Producers, then owner of the HAL Parcel, leased the Southern Parcel from Pumice and accessed the Southern Parcel for twenty-four years, from 1965 to 1999, via *only* the Union Pacific Railroad right-of-way (without a recorded easement or license allowing that access). During 1999, the Union Pacific ended the right-of-way access to the Southern Parcel and Producers *removed a fence separating the HAL Parcel from the Southern Parcel* to continue accessing the Southern Parcel. When that fence was erected, who erected it, and where it was erected are questions currently unanswered by the record but may be material to whether a claim "adverse to" the three parcels' (then merged in Pumice) right to an easement by necessity occurred (i.e., accrual). This is another lens, illustrating the first hypothetical described *supra*, for whether accrual and extinguishment occurred as to the merged Northern, Southern, and Eastern Parcels' right when they were owned by Pumice—a predecessor of the Easterlings.

Third, the record reflects that at least as early as 1999, the Easterlings were officers of Pumice—approximately nineteen years *before* they filed this lawsuit. The factual development upon remand may reveal that accrual occurred against Pumice in the four years leading up to its sale of the Northern and Southern Parcels to the Easterlings in 2004. If the four-year statute of limitations in Idaho Code section 5-224 did not run against those merged parcels *before* Pumice conveyed them to the Easterlings, it would have continued against the Easterlings. Moreover, it would have continued against the Eastern Parcel, still owned by Pumice at that time. The 2004 conveyance would not reset or stop the clock as to any of the three parcels. In this circumstance, the merged Northern and Southern Parcels' right to an easement by necessity over the HAL Parcel, and the Eastern Parcel's separated right over the same, would be extinguished by operation of section 5-224 at least by 2008—approximately ten years *before* the Easterlings filed this lawsuit. This is another lens, illustrating the second hypothetical described *supra*, for whether accrual and extinguishment occurred as to the merged Northern and Southern Parcels'—and separately owned Eastern Parcel's—right to an easement by necessity over the HAL Parcel.

Fourth, the Easterlings owned the Northern and Southern Parcels from 2004 to 2015— some eleven years before they purchased and remerged the Eastern Parcel with these two parcels.

It may be that accrual, and extinguishment, occurred between 2004 and 2015 against the merged Northern and Southern Parcels *before* the Easterlings purchased the Eastern Parcel. Again, the Easterlings' purchase and merger of the Eastern Parcel in 2015 would not revive any extinguished right. Neither would it stop or reset the four-year clock under section 5-224 if it had *partially* run against the already merged Northern and Southern Parcels' right over the HAL Parcel. In such a circumstance, only the Eastern Parcel would still enjoy its right to an easement by necessity over the HAL Parcel. This is another lens, illustrating the second and third hypotheticals described *supra*, for whether accrual occurred as to any of the Easterlings' three parcels, individually or when merged.

Importantly, these four lenses merely illustrate how the principles of law set out above operate depending on the factual development upon remand. The appropriate lens for the district court to use will depend on the identity of the dominant estate at the time(s) the alleged accrual, if any, occurred.

Finally, there is an undeveloped issue of material fact worth mentioning here regarding when the Easterlings first became involved with Pumice. Edward Easterling's declaration in the record purports personal knowledge that Pumice acquired the "Easterling Property" in 1954 (i.e., the then merged Northern, Southern, and Eastern Parcels) and that at that time "the land was landlocked and there was no recorded access to the property." However, his declaration then states that "[p]rior to 2004, [he] did not know that there was no recorded access to the property along the railroad or through the HAL property." He claims that Producers (HAL's predecessor-in-interest) "led [him] to believe that there was recorded access along the railroad and/or through its property." Yet, the record shows that Edward Easterling became President of Pumice as early as 1990, and Janice Easterling has been its Secretary/Treasurer as early as 1997. Pumice owned the Northern, Southern, and Eastern Parcels as merged from approximately 1954 until the Easterlings' purchased the Northern and Southern Parcels in 2004 from Pumice—severing the Eastern Parcel. The Easterlings purchased the Eastern Parcel from a successor to Pumice in 2015. Thus, addressing the extent of the Easterlings' involvement with Pumice on remand may be important in deciding the accrual issue.

In summary, on remand, the district court must determine when, if ever, the Easterlings (or their predecessors-in-interest) knew, or reasonably should have known, of a claim by another "adverse to" the Northern, Southern, and/or Eastern Parcels' right to an easement by necessity

24

when merged or otherwise. This will answer the accrual issue—which is necessary to deciding whether none, one, some, or all of those three parcels' right to an easement by necessity over the HAL Parcel were extinguished by operation of section 5-224.

**B. The district court's decisions granting an easement by necessity for the Northern, Southern, and Eastern Parcels over the HAL Parcel are reversed.**

HAL challenged both: the district court's conclusions and findings after the bench trial granting an easement by necessity for the Northern Parcel; and the court's grant of an easement by necessity for the Southern and Eastern Parcels at summary judgment and reconsideration. We do not reach HAL's specific arguments. Instead, as explained above, there are undeveloped issues of material fact related to whether the Northern, Southern, and Eastern Parcels, as merged or otherwise, still enjoy the right to an easement by necessity *over the HAL Parcel*. Therefore, whether the Easterlings are entitled to an easement by necessity for one, some, all, or none of their parcels must be revisited on remand by the district court after it decides the statute of limitations issue.

**C. The district court's decisions setting the width of the easement and determining its location are reversed.**

HAL argues on appeal that the district court erred by granting the Easterlings summary judgment for the easement to be located at the western edge of the HAL Parcel. HAL further challenges the district court's findings and conclusions after the bench trial setting the easement's width at twenty-six feet. However, again, we do not reach HAL's specific arguments. Again, there are undeveloped issues of material fact related to whether the Northern, Southern, and Eastern Parcels, as merged or otherwise, still enjoy the right to an easement by necessity *over the HAL Parcel*. Furthermore, the findings and conclusions necessary to determine the easement's proper location and width, if the Easterlings are entitled to one, is contingent upon, and intertwined with, the result of the statute of limitations issue. Thus, these issues too must be revisited on remand.

**D. HAL is entitled to costs on appeal, and the Easterlings are denied attorney fees.**

Both sides request costs on appeal under Idaho Rule of Civil Procedure 54 and Idaho Appellate Rule 40. We find HAL is the prevailing party on appeal. HAL successfully challenged the district court's decision rejecting HAL's statute of limitations defense under Idaho Code section 5-224. Moreover, this resulted in HAL being successful on every remaining issue it raised on appeal because each decision HAL challenged on appeal is reversed and must be revisited on remand after the statute of limitations issue is decided. Therefore, we conclude that HAL is the

overall prevailing party on appeal. Accordingly, HAL is entitled to costs on appeal under Idaho Appellate Rule 40 as a matter of course.

The Easterlings claim attorney fees on appeal under Idaho Code section 12-121, arguing HAL brought its appeal frivolously, unreasonably, or without foundation. A party is not entitled to attorney fees under section 12-121 if they are not the prevailing party on appeal. I.C. § 12-121; *Armand v. Opportunity Mgmt. Co.*, 155 Idaho 592, 602, 315 P.3d 245, 255 (2013). Here, HAL was the prevailing party on appeal—not the Easterlings. Thus, the Easterlings' request for attorney fees under section 12-121 is denied.

## IV. CONCLUSION

We reverse the district court's decision at summary judgment rejecting HAL's statute of limitations defense under Idaho Code section 5-224. Because of this, we vacate the district court's judgment and reverse its decisions after the bench trial that the Northern Parcel is entitled to an easement by necessity over the HAL Parcel; and that the width of the easement is set at twenty-six feet. We further reverse the district court's decisions at summary judgment and reconsideration setting the location of the easement and granting an easement by necessity as to the Southern and Eastern Parcels over the HAL Parcel. Finally, HAL is entitled to costs on appeal, and the Easterlings' request for attorney fees is denied. We remand this case for further proceedings.

Justices BRODY and STEGNER, CONCUR.


MOELLER, Justice, dissenting.

Today the majority sweeps aside a longstanding common law principle dating back to Idaho's territorial era to announce a new rule of its own creation—one that has never before been applied by any Idaho court. Accordingly, I must respectfully dissent from the majority's analysis and conclusion. For the following reasons, I would have affirmed the district court on most grounds and only reversed the portion of the decision designating the location of the easement.

## I. ANALYSIS

The district court did not err in concluding that the four-year statute of limitations set forth in Idaho Code section 5-224 was inapplicable to an easement by necessity claim. This statute provides a statute of limitations for all actions not specifically listed in Chapter Two, Title Five of the Idaho Code. It states, "[a]n action for relief not hereinbefore provided for must be commenced within four (4) years after the cause of action shall have accrued." I.C. § 5-224. As the district

26

court noted below, and the majority acknowledges, there is no specific statute of limitations applicable to a claim of easement by necessity and no appellate opinion in Idaho has ever applied Idaho Code section 5-224 to an easement by necessity claim. Because no one has ever thought to raise this issue before, the majority views this as a case of first impression. I must respectfully disagree. The most likely reason we have not had cause to address this issue before now is because it has been a settled question of law for over 150 years.

A. **Common law and public policy considerations render a statute of limitations defense inapplicable to an easement by necessity claim.**

Strong public policy reasons support the common law rule that an easement by necessity claim is not governed by a statute of limitations. Plainly stated, placing a time limit on asserting an easement by necessity claim could forever render privately owned lands useless or unfit due to a lack of access, thereby preventing beneficial use, occupancy, or successful cultivation of those lands. These considerations go against Idaho's public policy to encourage full use of its lands.

" 'An easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner.' " *Backman v. Lawrence*, 147 Idaho 390, 394, 210 P.3d 75, 79 (2009) (quoting *Akers v. D.L. White Constr., Inc.,* 142 Idaho 293, 298, 127 P.3d 196, 201 (2005)). An easement by necessity arises and is *implied* at the conveyance of a tract of land that is landlocked and inaccessible via public road in favor of the grantee. *See Burley Brick and Sand Co. v. Cofer*, 102 Idaho 333, 335, 629 P.2d 1166, 1168 (1981). This Court has explained:

> A way of necessity arises where there is a conveyance of a part of a tract of land of such nature and extent that either the part conveyed or the part retained is entirely surrounded by the land from which it is severed or by this land and the land of strangers. It is a universally established principle that where a tract of land is conveyed which is separated from the highway by other lands of the grantor or surrounded by his lands or by his and those of third persons, there arises, by implication, in favor of the grantee, a way of necessity across the premises of the grantor to the highway.

*Id.* at 335, 629 P.2d at 1168 (quoting *Martino v. Fleenor*, 148 Colo. 136, 139-40, 365 P.2d 247, 249 (1961)).

"Idaho public policy strongly favors the full use of lands . . . ." *Backman*, 147 Idaho at 394, 210 P.3d at 79. "An easement by necessity is of common-law origin and is supported by the rule of sound public policy that lands should not be rendered unfit for occupancy or successful cultivation . . . ." *Id.* (quoting *Burley Brick*, 102 Idaho at 335, 629 P.2d at 1168). The majority's

application of Idaho Code section 5-224 to bar the Easterlings' claims will render their lands useless and thereby violate Idaho's public policy to allow the full use of lands.

This case presents a collision between two public policy considerations: (1) the statute of limitations, which bars stale claims, and (2) the easement by necessity doctrine, which promotes the full use of lands. Persuasive authority suggests that the former must bend to the latter. While the majority dismisses such authority as "non-binding" and relying upon "legal fiction," in doing so it merely pays lip service to Idaho's strong and oft-repeated public policy favoring the full use of its lands—a vast, yet finite resource.

For example, the RESTATEMENT (THIRD) OF PROPERTY states, "Although the necessity must exist at the time of severance, *there is no time limit on when the easement may be claimed*." RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 2.15 (2000) (emphasis added). This principle is further elucidated in THE LAW OF EASEMENTS & LICENSES IN LAND:

> When the necessity is ongoing, the easement may lie dormant for many years and through changes in ownership of the dominant estate. A subsequent owner of the dominant tenement may activate the easement long after the circumstances calling for its implication arose. Thus, *one who asserts a dormant easement of necessity cannot be thwarted by a statute of limitations or the defense of laches*. A contrary approach would inhibit the owner of landlocked property from making productive use of the land merely because the owner had allowed the property to lie fallow for some period following the transaction that rendered it landlocked or because, after severance, the owner initially had some form of permissive access to the property that subsequently was revoked.

Easements of necessity—Requirements—Continuing necessity, THE LAW OF EASEMENTS & LICENSES IN LAND § 4:12 (2021).

Courts in other jurisdictions that have confronted this issue have this approach. For example, in *Hinrichs v. Melton*, the plaintiff owned two contiguous parcels of land and sold the southern parcel to the defendants in 1999. 11 Cal. App. 5th 516, 520, 218 Cal. Rptr. 3d 13, 16 (2017). This left the plaintiff's remaining parcel landlocked. *Id.* Many years later, the plaintiff brought an action against the owners of three neighboring parcels, including defendants, in order to establish an easement to access plaintiff's parcel. *Id.* at 519, 218 Cal. Rptr. 3d at 16. The trial court granted the plaintiff an easement by necessity over defendants' parcel. *Id.* at 522, 218 Cal. Rptr. 3d at 17. On appeal, the defendants asserted that if plaintiff ever had an easement by necessity over defendant's parcel, it was extinguished by the five-year statute of limitations on quiet title actions. *Id.* at 529, 218 Cal. Rptr. 3d at 23. The court rejected the defendants' argument, finding

that "[a]n easement by necessity cannot be extinguished as long as the necessity exists." *Id.* at 530, 218 Cal. Rptr. 3d at 23. The court held that the statute of limitations on quiet title action does not apply to an easement by necessity claim. *Id.*

Likewise, in *Canali v. Satre*, the plaintiff's predecessor in interest owned five adjoining parcels of land (A, B, C, D, and E). 293 Ill. App. 3d 407, 408, 688 N.E.2d 351, 352 (1997). Parcels A, B, and C were conveyed to other owners between 1931 and 1936. *Id.* In late 1936, Plaintiff's predecessor in interest conveyed parcel D and retained parcel E. *Id.* The parties agreed that when parcel D was conveyed, parcel E became landlocked. *Id.* Plaintiff purchased the landlocked parcel E from the bankruptcy court and parcel D from defendant. *Id.* Parcel D contains a driveway. *Id.* Plaintiff brought suit against defendants claiming he had acquired an "easement of necessity by implication" to the driveway on parcel D in order to access his parcel E. *Id.* The trial court granted defendants' motion for summary judgment to quiet title, stating that plaintiff "must take it as he found it, with or without access" *Id.*

On appeal, defendants asserted that plaintiff's claim was barred by the statute of limitations. *Id.* at 411, 688 N.E.2d at 354. Similar to this case, the statute of limitations asserted by defendants in *Canali* was the Illinois general statute of limitations on claims to real estate. *See* 735 Ill. Comp. Stat. Ann. 5/13-118 (West 2021).[1] It provided in part:

> . . . No action based upon any claim arising or existing more than 40 years before the commencement of such action shall be maintained in any court to recover any real estate in this State or to recover or establish any interest therein or claim thereto, against the holder of the record title to such real estate when such holder of the record title and his or her grantors immediate or remote are shown by the record to have held chain of title to such real estate for at least 40 years before the action is commenced . . . .

*Id.* Despite the extremely long 40-year statute of limitations—ten times longer than Idaho's catch-all provision—the court rejected defendants' assertion. *Canali*, 293 Ill. App. 3d at 411, 688 N.E.2d at 354. The court reasoned,

> [w]hile the time of severance is important to establish the presumption that the grantee and grantor did not intend to render the land unfit for occupancy, the interest in the easement did not arise until its use became necessary. *See Finn v. Williams,* 376 Ill. 95, 99, 33 N.E.2d 226 (1941) (the easement by necessity may lie dormant through several transfers of title, yet pass with each transfer as appurtenant to the dominant estate and be exercised at any time by the titleholder). To find otherwise

---

[1] Although I recognize *Canali* was decided in 1997, the statute at issue has not been amended since 1983.

would frustrate the purpose of an easement by necessity, which is to put land to its highest and best use.

*Id.* Accordingly, the court reversed the district court's order granting summary judgment to the defendants and entered summary judgment for the plaintiff. *Id.*

Other courts have reached a similar conclusion when a statute of limitations is asserted as a defense to an easement by necessity. *See, e.g., Attaway v. Davis*, 288 Ark. 478, 479, 707 S.W.2d 302, 303 (Ark. 1986) ("A way of necessity having been created by implication for the benefit of the grantee of the dominant estate or his successors thereafter, it cannot be extinguished so long as the necessity continues to exist."); *Carroll v. Carroll*, 355 S.W.3d 463, 468 (Ky. Ct. App. 2011) ("[G]enerally speaking, a claim for an easement by necessity is not subject to a statute of limitations."); *William C. Haak Trust v. Wilusz*, 949 N.E.2d 833, 837 (Ind. Ct. App. 2011) ("[T]he right to an easement of necessity does not expire or attach itself to a particular owner; there is no statute of limitations on easement of necessity and the right to one does not expire upon transfer of either the dominant or servient estates."); *see also* 20 Causes of Action 395 §21 (2021) (Originally published in 1989) ("Because of the continuing nature of an easement of necessity, an action to establish an easement of necessity is generally not barred by any statute of limitations.").

The majority, while recognizing its position diverges from substantial authority, simply concludes that "we will reject non-binding authorities, such as the Restatement, when they do not 'fit the needs of Idaho jurisprudence.' *Peterson v. Idaho First Nat. Bank*, 117 Idaho 724, 726, 791 P.2d 1303, 1305 (1990). We do that here." However, in doing so, the majority provides no clear explanation why the current approach—which has been a part of the common law in Idaho for over 150 years— has not served "the needs of Idaho" until now. One is left to wonder what has changed.

Here, the district court, after carefully surveying the existing law, correctly concluded that a statute of limitations defense should give way to the important public policy to use Idaho's lands to its fullest:

> [W]here an easement by necessity is [] based on public policy, a statute of limitations should not be used to thwart that public policy. . . . [T]his action is not a claim to create a right that didn't already exist, but rather is an action to judicially recognize an easement that came into effect at the time of the severance. There was no need to seek a judicial declaration of an easement until [the Easterlings] decided to put their property to a use for which a legally recognized easement was required. . . . Otherwise, the untenable result would be to have property landlocked and

30

without access which, for all intents and purposes, would render the property useless.

I agree with the persuasive reasoning of the district court and note that much persuasive authority commends this approach. If the statute of limitations were applied to bar the Easterlings' claim, it will render their lands useless. There is no other access point to ingress and egress their parcels. Such a holding would contravene Idaho's clear public policy regarding land.

In sum, an action for an easement by necessity does not actually seek to bring about a change in the status of the property because an easement by necessity is *implied* and arises *at the time of severance* of the property. The bringing of a declaratory action is merely the method by which courts judicially recognize and affirm the existence of the easement in order to clarify and enforce the respective rights of the interested parties. Thus, a statute of limitations would have no logical application to the easement by necessity claim in this case, which merely seeks judicial recognition that the Easterlings and their predecessors have always possessed an implied easement to their property since the time of severance.

**B. Idaho's statutory scheme suggests Idaho Code section 5-224 was never intended to apply to an easement by necessity claim.**

While the majority's conclusion that the plain language of Idaho Code section 5-224 makes it applicable to an easement by necessity claim may seem attractive at first blush, it does not withstand closer scrutiny. Chapter 2 of Title 5 covers a broad array of actions. For example, the Chapter includes statutes of limitations regarding written contracts (I.C. § 5-216), oral contracts (I.C. § 5- 217), personal injuries (I.C. § 5-219), and actions to recover child support (I.C. § 5-245). Yet, the Chapter does not include a statute of limitations for asserting an easement to real property.[2]

Nevertheless, Chapter 2 of Title 5 contains provisions related specifically to certain discrete real property actions, and the Idaho legislature has demonstrated a willingness to modify long-existing time limits for initiating an action regarding land. For example, in 2006 the legislature amended Idaho Code section 5-203 so that the period of time that must pass before bringing an action to recover realty was increased from five to twenty years. S.B. 1311, S.L. 2006, ch. 158, § 5-203. Identical changes were made to the time for bringing actions arising from the adverse possession of real property, such as claims for title to, or rents or profits from, real property (I.C. § 5-204), constructive possession (I.C. § 5-206), possession under written and oral claims of title

---

[2] Idaho Code section 5-246 addresses a dam owner's claim for a "prescriptive overflow easement."

(I.C. §§ 5-207 and 5-210), holdover possession by a tenant (I.C. § 5-211), and the recovery of property by persons under a disability (I.C. § 5-213). *Id.* The previous five-year waiting period for asserting such claims had been in effect since 1887, three years prior to Idaho's statehood.

Although not identical to an easement by necessity, these causes of action are conceptually related in that (1) they each concern real property, (2) they each concern the establishment of property rights that are adverse to another's, and (3) they each impose a 20-year time period during which a litigant must wait *before* bringing such a claim. This last similarity is vital. None of these provisions actually create what is typically referred to as a "statute of limitations" because they don't set a time period *within which* an action must be commenced. Rather, these provisions set forth the minimum time period *after which* an action may commence. In other words, these types of real property actions only ripen *after* the passage of a set timeframe. This means that while a person seeking to bring an adverse possession claim must wait at least 20 years to bring it, there is no limit placed on how long they have to commence the action once it accrues. In this respect, the subjects of these statutes more conceptually resemble an easement by necessity, which springs to life at the time of severance of the dominant and servient estates as long as there was necessity (1) "at the time of severance" and (2) "great present necessity" at the time the right is asserted. *Machado*, 153 Idaho at 219, 280 P.3d at 722. Therefore, a statute of limitations cannot apply under such circumstances because an easement by necessity is not the result of an action seeking to create a new right in real property; it is merely a judicially decreed acknowledgment that the right has existed all along.

The majority has failed to recognize that due to the distinctive characteristics of an easement by necessity claim and similar adverse possession-type claims concerning real property, they are not governed by the same type of limitation period as a breach of contract claim. Given the legislature's unique treatment of real property claims, if it had really intended to place a statute of limitations on asserting an easement by necessity claim or defense, it seems unlikely it would have relied upon the "catch-all" provision in Idaho Code section 5-224 to do so. As previously noted, section 5-224 places a four-year limit within which "[a]n action for relief not hereinbefore provided for must be commenced." Applying this standard here would be antithetical to the reasons why the common law has recognized easement by necessity claims, and inconsistent with the related provisions of Chapter 2, Title 5 that impose no limitation on similar property-related

actions. Therefore, the more reasonable and logical conclusion is that the legislature never intended to abrogate the common law doctrine of easement by necessity by the adoption of section 5-224.

By accepting HAL's interpretation of the "catch-all" statute, and concluding that section 5-224 applies to a class of cases it has never been applied to before, the majority has abrogated a common law principle in effect since Idaho became a territory in 1863. Of course, this Court has recognized that the legislature is free to enact legislation that departs from the common law, if it expressly manifests such intent. " 'Where the clear implication of a legislative act is to change the common law rule we recognize the modification because the legislature has the power to abrogate the common law.' " *Eagle Equity Fund, LLC v. TitleOne Corp.*, 161 Idaho 355, 361, 386 P.3d 496, 502 (2016) (quoting *Mickelsen v. Broadway Ford, Inc.*, 153 Idaho 149, 153, 280 P.3d 176, 180 (2012)). However, if the legislature intends to modify the common law, it must unequivocally do so. "We presume that the legislature did not intend to change the common law unless the language of a statute clearly indicates the legislature's intent to do so." *Thomson v. City of Lewiston*, 137 Idaho 473, 478, 50 P.3d 488, 493 (2002). Here, the broad catch-all language of Idaho Code section 5-224 is anything but a clear indication of the legislature's intent to depart from the common law and impose a four-year statute of limitations on easement by necessity claims—a departure that would be inconsistent with how similar claims are dealt with elsewhere in Chapter 2 of Title 5. Unlike the majority, without such clear intent, I cannot simply presume that the 1881 territorial legislature, or any subsequent Idaho legislatures, intended to abrogate the common law in this manner.

**C. Because the statute of limitations issue has been wrongly decided by the majority, this error flows to the remainder of the decision.**

Because I dissent from the underlying legal basis of the majority's decision, that the Easterlings' claims are time-barred under Idaho Code section 5-224, I must also dissent from the portions of the decision which reverse the rulings of the district court granting the Easterlings an easement over the HAL parcel. Although not addressed by the majority, I would have remanded the portion of the district court's decision designating the location of the easement on the basis that HAL did not have proper notice and an opportunity to properly oppose the request through argument and evidence.

## II. CONCLUSION

In Idaho and elsewhere, the doctrine of easement by necessity is based on sound public policy: namely, a strong preference for encouraging the full use of land. This policy choice has

33

been applied by Idaho courts without objection for over 150 years. By limiting the time for asserting such claims to only four years, the majority has significantly hampered this policy. The foreseeable and unforeseeable consequences of the majority's decision are legion. Thus, I respectfully dissent.

Chief Justice BEVAN CONCURS.


**ADDENDUM ON REHEARING TO THIS COURT'S ORIGINAL OPINION FILED ON DECEMBER 21, 2021**

On January 31, 2022, this Court entered an Order Granting Petition for Rehearing, and ordered briefing on the limited issue as to whether HAL Pacific Properties properly raised the statute of limitations set forth in Idaho Code section 5-224 as an affirmative defense. Subsequently, ORAL ARGUMENT was held on September 12, 2022. AFTER FURTHER REVIEW it has been determined that the PETITION FOR REHEARING was improvidently granted; therefore, IT IS ORDERED that the Opinion issued by this Court on December 21, 2021, shall represent the Opinion of this Court, with the remittitur to issue forthwith.

Chief Justice BEVAN, and Justices BRODY, STEGNER, MOELLER, and ZAHN CONCUR.